# EXHIBIT 1



# Notice of Service of Process

**LDD / ALL**
**Transmittal Number: 7157881**
**Date Processed: 11/17/2009**

**Primary Contact:**     Cynthia J. Pearson
The Boeing Company
100 N Riverside MC 5003-1001
Chicago, IL 60606-1596

| | |
|---|---|
| **Entity:** | The Boeing Company<br>Entity ID Number  1901768 |
| **Entity Served:** | The Boeing Company |
| **Title of Action:** | Robert Ledford vs. The Boeing Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court:** | Cook County Circuit Court, Illinois |
| **Case Number:** | 2009L013786 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 11/17/2009 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Todd A. Smith<br>312-236-9381 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(Rev. 9/3/99) CCG 0001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

ROBERT LEDFORD,

    Plaintiff,

v.

THE BOEING COMPANY, a corporation,

    Defendant.

No.

Please serve: 2009L013786 CALENDAR/ROOM Z
The Boeing Company TIME 00:00
c/o Its President Product Liability
Mr. Jim Mcnerney or other agent
100 North Riverside Plaza
Chicago, IL 60606

The Boeing Company
c/o its Registered Agent
Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

## SUMMONS

**To each defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file appearance, in the office of the Clerk of this Court at the following locations:

☒ Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602

| | | |
|---|---|---|
| ❏ District 2 - Skokie<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ❏ District 3 - Rolling Meadows<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ❏ District 4 - Maywood<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ❏ District 5 - Bridgeview<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ❏ District 6 - Markham<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | |

You must file within 30 days after service of this summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

Name POWER ROGERS & SMITH, P.C.
     Todd A. Smith
Attorney for Plaintiff(s)
Address 70 W. Madison Street
City Chicago, Illinois 60602-4212
Telephone 312-236-9381
Atty. No. 31444

WITNESS, _____, 20 _____

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

**Service by Facsimile Transmission will be accepted at:** 312-236-0920
(Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(Rev. 9/3/99) CCG 0001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____LAW_____ DIVISION

ROBERT LEDFORD,

        Plaintiff,

v.

THE BOEING COMPANY, a corporation,

        Defendant.

No. 2009L013786 CALENDAR/ROOM Z TIME 00:00 Product Liability

Please serve:
The Boeing Company
c/o Its President
Mr. Jim Mcnerney or other agent
100 North Riverside Plaza
Chicago, IL 60606

The Boeing Company
c/o its Registered Agent
Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

### SUMMONS

**To each defendant:**

    **YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file appearance, in the office of the Clerk of this Court at the following locations:

    ☒    **Richard J. Daley Center, 50 W. Washington, Room 801, Chicago, Illinois 60602**

| | | |
|---|---|---|
| ☐ **District 2 - Skokie** 5600 Old Orchard Rd. Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows** 2121 Euclid Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood** 1500 Maybrook Ave. Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview** 10220 S. 76th Ave. Bridgeview, IL 60455 | ☐ **District 6 - Markham** 16501 S. Kedzie Pkwy. Markham, IL 60426 | |

**You must file within 30 days after service of this summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

    **This summons must be returned** by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

| | |
|---|---|
| Name **POWER ROGERS & SMITH, P.C.** | WITNESS, NOV 1 2009 , 20 ____ |
|     **Todd A. Smith** | |
| Attorney for  Plaintiff(s) | |
| Address    70 W. Madison Street | **Clerk of Court** |
| City      Chicago, Illinois 60602-4212 | |
| Telephone  312-236-9381 | |
| Atty. No.    31444 | Date of service: _____ |
| | (To be inserted by officer on copy left with defendant or other person) |

DOROTHY BROWN CLERK OF CIRCUIT COURT

**Service by Facsimile Transmission will be accepted at: ___ 312-236-0920 ___**
                                          (Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

STATE OF ILLINOIS    )
                   ) SS
COUNTY OF COOK    )

(Attorney No. 31444)

## IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
## COUNTY DEPARTMENT LAW DIVISION

```
2009L013786
CALENDAR/ROOM Z
TIME 00:00
Product Liability
```

RONALD LEDFORD    )
            )
    Plaintiff    )  NO.
    v.    )
            )
THE BOEING CO., a corporation,    )  *Plaintiff Demands Trial by Jury*
            )
    Defendant.    )
            )

### COMPLAINT AT LAW

Plaintiff RONALD LEDFORD ("Mr. Ledford"), by and through his attorneys POWER ROGERS & SMITH, P.C. and KREINDLER & KREINDLER LLP for his Complaint against defendant The Boeing Co, ("Boeing") states as follows:

### PARTIES

1. Mr. Ledford is a citizen of the United States of America, domiciled in Spring Hill, Florida.

2. Boeing is a corporation which has its principal place of business in, and is a resident of, Cook County, Illinois.

1

3.     Plaintiff Boeing was engaged in the business of designing. manufacturing. assembling. testing. servicing and selling commercial aircraft at all times relevant to this complaint.

## FACTS

4.     On February 25, 2009, Mr. Ledford was a passenger on board a Boeing 737-800 aircraft ("the Boeing airplane") operated by Turkish Airlines, Inc. as Flight TK 1951 from Istanbul International Ataturk Airport, Turkey, to Amsterdam Airport Schiphol ("Schiphol Airport") in the Netherlands when it crashed during an attempted approach and landing to Schiphol Airport.

5.     As a result of the crash, Mr. Ledford and other passengers sustained serious physical and psychological injuries and some passengers were killed.

6.     At a time prior to February 25, 2009, Boeing designed, tested. manufactured, assembled, serviced and sold its Model 737-800 aircraft, including the Boeing airplane at issue.

7.     By reason of Boeing's design decisions, the Boeing airplane included the following instruments and systems, among others:

> Two radio altimeters
> Two primary barometric altimeters
> An autothrottle system
> Autopilot systems

8.     By reason of Boeing's design decisions, one radio altimeter displayed altitude information to an instrument on the left side of the cockpit (the "left radio altimeter") and one radio altimeter displayed altitude information to the right side of the cockpit (the "right radio altimeter").

2

9.    By reason of Boeing's design decisions, the radio altimeters were supposed to accurately determine the aircraft's altitude above ground level ("AGL") from ground to 2500 feet and accurately communicate that information to the aircraft systems and the pilots.

10.    By reason of Boeing's design decisions, the two primary barometric altimeters were supposed to accurately determine the airplane's altitude with respect to mean sea level.

11.    By reason of Boeing's design decisions, the autothrottle system was supposed to maintain the airspeed selected by the pilots.

12.    By reason of Boeing's design decisions, the autothrottle system received its inputs exclusively from the left radio altimeter and incorporated a design feature that would result in the autothrottle entering a retard mode, i.e. flight idle, when the left radio altimeter communicated to the autothrottle that the airplane was close to or on the ground.

13.    On February 25, 2009, based upon information retrieved from the subject aircraft's digital flight data recorder instrument, the left radio altimeter erroneously determined and communicated to the autothrottle system that the subject aircraft was approximately 8 feet below ground level when in fact the aircraft was at approximately 1950 AGL.

14.    As a direct result of the erroneous radio altimeter information communicated to the autothrottle system, the autothrottle system, which had been programmed by the pilots of the subject aircraft to maintain 144 knots, quickly reduced

3

the airspeed to well below 144 knots causing the aircraft to enter an aerodynamic stall and to crash.

15.    By reason of Boeing's design decisions, the autothrottle system lacked any ability to verify whether the altitude information communicated by the left radio altimeter was or was not accurate or valid, and did not have the capacity or ability to receive inputs or cross-check inputs from the right side radio altimeter or otherwise determine whether inputs supplied by the left radio altimeter were inaccurate, invalid and/or implausible.

## COUNT 1

### First Cause of Action: Strict Liability

16.    At the time the Boeing airplane left Boeing's custody and control, it was defective and unreasonably dangerous in one or more of the following respects:

     a.  The Boeing airplane lacked proper and effective radio altimeters:

          i.  The left radio altimeter transmitted an inaccurate, invalid and/or implausible altitude to the Boeing airplane's autothrottle system;

     b.  The Boeing airplane lacked a proper and effective autothrottle system:

          i.  The Boeing airplane's autothrottle system failed to recognize that the altitude supplied by the left radio altimeter was inaccurate, invalid and/or implausible;

          ii.  The Boeing airplane's autothrottle system failed to respond appropriately when the left radio altimeter

4

supplied inaccurate, invalid and/or implausible data to the autothrottle system;

c. The autothrottle system made no distinction between receiving accurate data, inaccurate data, invalid data and/or non-plausible data;

d. The autothrottle system was not capable of identifying that the information provided by the left radio altimeter was inaccurate, invalid and/or implausible;

e. The autothrottle system was not designed with the capability to cross-check data between the left and the right radio altimeter and therefore was not able to identify a discrepancy in the data supplied by the left radio altimeter as compared to data supplied by the right radio altimeter;

f. The autothrottle system failed to provide sufficient, timely, and audible warning(s) of having entered an invalid mode for the phase of flight; and

g. The autothrottle system provided insufficient warning that the input from the left radio altimeter to the autothrottle was inaccurate, invalid and/or implausible.

17.     By reasons of design choices made by Boeing, the Boeing airplane's design allowed an inaccurate, invalid and/or implausible altitude provided by the left radio altimeter to cause the autothrottle system to enter and remain in retard mode, slowing the airplane and causing an aerodynamic stall and crash.

5

18.     By reason of design decisions. the Boeing airplane lacked a comparator function, which would have allowed cross-checks among its radio altimeters and barometric altimeters to verify that data being supplied by the left radio altimeter was valid and accurate.

19.     By reason of Boeing design decisions, the Boeing airplane lacked proper and effective warnings and instructions:

> a.   The Boeing airplane lacked proper warnings regarding the use of the radio altimeters:
>
> b.   The Boeing airplane lacked proper warnings regarding the use of the autothrottle;
>
> c.   The Boeing airplane lacked proper warnings regarding the use of the autopilot;
>
> d.   Boeing failed to warn pilots that inaccurate data supplied by the left radio altimeter could cause the autothrottle system to enter retard mode, reducing power to flight idle; and
>
> e.   The Boeing airplane failed to warn pilots on the primary flight display when there was a problem with the left radio altimeter, or the radio altimeter's tranducer or antenna.

20.     By reason of Boeing design decisions, the Boeing airplane lacked low airspeed or low energy warning systems.

21.     By reason of Boeing design decisions, the Boeing airplane lacked a proper and effective autopilot.

6

22.     By reason of Boeing design decisions. the Boeing airplane, including its radio altimeters, flight control computers, autothrottle. autopilot and/or primary flight displays, was otherwise defective.

23.     As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the Boeing airplane, it violently crashed causing Mr. Ledford and the other passengers to suffer multiple severe injuries, pain and suffering, and severe pre-impact terror.

24.     Upon information and belief the Boeing airplane and its components, including the left radio altimeter, autopilot and autothrottle systems, were not altered or modified since they were initially installed by Boeing, or at Boeing's direction, and were properly maintained.

25.     By reason of the foregoing the Boeing airplane was unreasonably dangerous and defective and Boeing is strictly liable for the damages sustained by the plaintiff and others.

WHEREFORE, plaintiff prays for the entry of a judgment in his favor and against defendant Boeing for an amount in excess of seventy-five thousand dollars ($75,000), the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT II

### Second Cause of Action:  Negligence

26.     Plaintiff realleges paragraphs 1-25.

27.     At all times relevant hereto, Boeing owed a duty to Mr. Ledford to use reasonable care in designing, manufacturing, assembling, testing, maintaining, servicing

7

and selling the Boeing airplane so as to not cause severe personal injuries. pain and

suffering. and severe pre-impact terror to him.

28.     Boeing negligently breached its duty of care owed to Mr. Ledford through

one or more of the following negligent acts and omissions:

(a)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the left radio altimeter had the capacity to transmit inaccurate, invalid and/or implausible information to the autothrottle system;

(b)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system failed to recognize inaccurate, invalid and/or implausible information supplied to it;

(c)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system failed to respond appropriately when inaccurate, invalid and/or implausible information was supplied to it;

(d)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system did not identify inaccurate inputs from the left radio altimeter;

(e)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system did not appropriately respond to inaccurate inputs from the left radio altimeter;

(f)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system failed to provide sufficient, timely and audible warning(s) of having entered an invalid mode for the phase of flight;

(g)      negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system made no distinction between receiving valid data, no data, faulty data, and/or non-plausible data and provided no warning to the crew of such input of no data, faulty data, and/or non-plausible data;

(h)     negligently designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system provided insufficient and no audible warning when no data, faulty data,

8

and/or non-plausible data has been transmitted to the autothrottle system;

(i)    negligently failed to incorporate a low speed or low energy warning system into the Boeing airplane;

(j)    negligently failed to incorporate a proper and effective autopilot in the Boeing airplane;

(k)    negligently failed to properly test the Boeing airplane before distributing it;

(l)    negligently failed to adequately maintain, service and/or inspect the Boeing airplane;

(m)    negligently failed to warn of the defective and unreasonably dangerous conditions of the Boeing airplane; and

(n)    was otherwise negligent and careless.

29.    As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of Boeing, the Boeing airplane was caused to, and did, violently crash and Mr. Ledford and others suffered severe personal injuries, pain and suffering, and severe pre-impact terror.

WHEREFORE, plaintiff prays for the entry of a judgment in his favor and against defendant Boeing for an amount in excess of seventy-five thousand dollars ($75,000.00), the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

## COUNT III

### Willful and Wanton – Defendant The Boeing Company

30.    Plaintiff realleges paragraphs 1-29.

9

31.    At all times relevant hereto. Boeing owed Mr. Ledford the duty not to

willfully and wantonly design, manufacture. assemble, and/or sell the Boeing airplane

and its various components, some of which are mentioned above.

32.    On and prior to February 25. 2009. in violation of the aforesaid duties,

Boeing, by and through its employees and/or actual/apparent agents, acted willfully and

wantonly as follows:

(a)    willfully and wantonly designed, manufactured, assembled and
sold the Boeing airplane such that the left radio altimeter had the
capacity to transmit inaccurate information to the autothrottle
system;

(b)    willfully and wantonly designed, manufactured, assembled and
sold the Boeing airplane such that the autothrottle system failed to
recognize inaccurate, invalid and/or implausible information
supplied to it;

(c)    willfully and wantonly designed, manufactured, assembled and
sold the Boeing airplane such that the autothrottle system failed to
respond appropriately when inaccurate, invalid and/or implausible
information was supplied to it:

(d)    willfully and wantonly designed, manufactured, assembled and
sold the accident airplane such that the autothrottle system did not
identify inaccurate inputs from the left radio altimeter;

(e)    willfully and wantonly designed, manufactured, assembled and
sold the Boeing airplane such that the autothrottle system did not
appropriately respond to inaccurate inputs from the left radio
altimeter;

(f)    willfully and wantonly designed, manufactured, assembled and
sold the Boeing airplane such that the autothrottle system failed to
provide sufficient, timely and audible warning(s) of having entered
an invalid mode for the phase of flight;

(g)    willfully and wantonly designed, manufactured, assembled and
sold the Boeing airplane such that the autothrottle system made no
distinction between receiving valid data, no data, faulty data,
and/or non-plausible data and provided no warning to the crew of
such input of no data, faulty data, and/or non-plausible data;

(h) willfully and wantonly designed, manufactured, assembled and sold the Boeing airplane such that the autothrottle system provided insufficient and no audible warning when no data, faulty data, and/or non-plausible data has been transmitted to the autothrottle system;

(i) willfully and wantonly failed to incorporate a low speed or low energy warning system into the Boeing airplane;

(j) willfully and wantonly failed to incorporate a proper and effective autopilot in the Boeing airplane;

(k) willfully and wantonly failed to properly test the Boeing airplane before distributing it;

(l) willfully and wantonly failed to adequately maintain, service and/or inspect the Boeing airplane;

(m) willfully and wantonly failed to warn of the defective and unreasonably dangerous conditions of the Boeing airplane; and

(n) was otherwise willful and wanton.

33. As the direct and proximate result of one or more of the aforesaid willful and wanton conduct of Boeing, the Boeing airplane was caused to, and did, violently crash and Mr. Ledford suffered severe personal injuries, pain and suffering, and severe pre-impact terror.

WHEREFORE, Mr. Ledford prays that judgment be entered in his favor and against the defendant The Boeing Company, in the sum in excess of seventy-five thousand dollars ($75,000.00), the minimum jurisdictional amount of this Court, together with costs and such other damages as may be allowed by law.

Dated: November /7, 2009

Attorneys for Plaintiffs

11

Todd Smith
POWER ROGERS AND SMITH, PC
Three First National Plaza
70 West Madison Street, 55th Floor
Chicago, IL 60602
Tel: (312) 236-9381
Of Counsel:

Marc S. Moller
Justin T. Green
Orla M. Brady
KREINDLER & KREINDLER LLP
*Pending Admission Pro Hac Vice*
100 Park Ave.
New York, NY 10017
Tel: (212) 687-8181

Anthony Tarricone
KREINDLER & KREINDLER LLP
*Pending Admission Pro Hac Vice*
277 Dartmouth Street.
Boston, MA 021116