**2**

STATE OF ILLINOIS     )
                              )SS
COUNTY OF COOK      )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| RONALD LEDFORD, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 2009 L 13786 |
| v. | ) | **Consolidated for discovery purposes only** |
| | ) | **with:** |
| THE BOEING COMPANY | ) | 09 L 013791   09 L 13794   09 L 13797 |
| | ) | 10 L 3556     10 L 7557    10 L 7558 |
| Defendant | ) | 10 L 7560     10 L 7563    10 L 7568 |
| | ) | 10 L 7569     10 L 7571    10 L 7574 |
| | ) | 10 L 7575     10 L 7577    10 L 7578 |
| | ) | 10 L 7579     10 L 7580    10 L 7629 |

## PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT BOEING'S *FORUM NON CONVENIENS* MOTION

**I.    INTRODUCTION**

       Defendant Boeing's motion to dismiss on the ground of *forum non conveniens* should be denied. Boeing fails to identify any *"exceptional circumstances"* to warrant this Court finding that Boeing's requested forum, the State of Washington, is a *"strongly favored"* forum for this case and thus cannot meet the heavy burden required to displace plaintiffs' chosen forum.

       In this product liability case, the facts developed to date demonstrate that the private interest factors do not favor Washington State. Witnesses are scattered in the United States (with many of them either in or substantially closer to Plaintiffs' chosen forum than Defendant's suggested forum) and throughout the world. The public interest factors likewise do not overcome Illinois' interest in promoting and insuring that Boeing aircraft are safe. Boeing, which is headquartered in Illinois, sells its aircraft worldwide, and they fill this State's skies and airports every day.

These consolidated cases arise from the February 25, 2009 crash of Turkish Airlines flight TK1951, a Boeing 737-800 aircraft that crashed during approach near Schiphol Airport in Amsterdam. As a result of the crash, four crew members and five passengers died, and three crew members and 117 passengers were injured. Consolidated Plaintiffs, the representatives of 100 of the injured individuals, and two of the decedents, brought these claims for product liability and negligence against the United States manufacturer of the aircraft, The Boeing Company ("Boeing"), which has its principal place of business in Chicago, Illinois.

Before filing this *forum non conveniens* motion, Boeing first attempted to remove the first four filed cases (*Ledford v. The Boeing Company,* No.: 09 L 013786; *Er v. The Boeing Company*, No.: 09 L 013791; *Kaya, et al. v. The Boeing Company*, No.: 09 L 013794; and *Alkan v. The Boeing Company*, No. 09 L 013797) from Plaintiffs' chosen forum to Federal Court arguing that Boeing's principal place of business may be somewhere other than Chicago, Illinois and that removal was therefore permitted. (*See, e.g., Removal Notice* in the *Alkan* case, Exhibit "1" hereto).[1]  The district court remanded the *Ledford, Er* and *Kaya* cases (because it was clear under 7th Circuit precedent that Boeing's principal place of business is Chicago, Illinois). (See *Remand Orders*, Group Exhibit "2" hereto). Ultimately, Boeing, conceded in the *Alkan* case that the United States Supreme Court decision of *Hertz v. Friend,* 136 S.Ct. 1181 (2010), established that Boeing's principal place of business or "nerve center" is located in Illinois. (*See Defendant, Boeing's Stipulation to Remand* in the *Alkan* case, Exhibit "3").

Having failed in its baseless attempt to remove these cases from the Plaintiffs' chosen forum, Boeing now seeks to dismiss these cases from its principal place of business, Chicago, Illinois (the chosen forum of the Plaintiffs) and to transfer them to Seattle, Washington, under the

---

[1] The Exhibits to this Response are voluminous and are being separately filed.

doctrine of *forum non conveniens*. As Boeing has framed the issue, the question is only whether Illinois is so inconvenient as to create exceptional circumstances warranting dismissal of the Illinois cases. The answer is resoundingly "No".

## II.   FACTUAL BACKGROUND

### A.   Allegations relating to the crash.

Plaintiffs' claims are based upon Boeing's defective design and manufacture of the 737-800, which caused it to crash on February 25, 2009 near Schiphol Airport in Amsterdam. The Plaintiffs have alleged that the aircraft was equipped with two radio altimeters, a left radio altimeter and a right radio altimeter which were intended to accurately determine the aircraft's altitude above ground level ("AGL") from the ground to 2,500 feet. (*See Ledford Complaint* ¶¶ 7-9, Exhibit "4"). The aircraft was also equipped with an autothrottle system, intended to maintain the airspeed selected by the pilots, and an autopilot, which was intended to maintain the airplane's flight path as programmed by the pilots. (*Ledford Complaint* ¶ 11). The autothrottle was manufactured by Smiths, now GE Aviation, which is based in Cincinnati, Ohio. (See *Dutch Safety Board Report* at p. 51 Exhibit "5"). The autopilot was manufactured by Honeywell, which is based in New Jersey. (*See Deposition of Thomas Dodt* at p. 18) (hereinafter "*Dodt Dep.*") (Exhibit "6" hereto). The radio altimeter, that Boeing selected for the 737 aircraft, was manufactured by the Thales Group in France. (*Dodt Dep.* at p. 20).[2]

By reason of Boeing's design decisions, the autothrottle system received its inputs exclusively from the left radio altimeter. (*Ledford Complaint* ¶ 12). When the left radio

---

[2] Thomas Dodt, the Affiant in Boeing's *forum non conveniens* motion stated in his affidavit that the original radio altimeters installed on the crash aircraft were tested and delivered to Boeing's assembly line in Renton, Washington from a Thales facility located in Seattle, Washington. In his deposition, he retracted from this statement and indicated that he has no evidence to support that statement and that they may have come from France. (*Dodt Dep.* at pp. 13-15; 22-23).

altimeter communicates to the autothrottle that the aircraft is close to the ground, the autothrottle enters a retard mode, causing the engines to reduce power to flight idle. (*Ledford Complaint* ¶ 12). This occurs even if the left radio altimeter erroneously indicates that the airplane is on or very near the ground even though the right radio altimeter is providing accurate altitude data. The autothrottle receives no data from the right radio altimeter and it and the aircraft's autopilot and related systems are incapable of distinguishing between valid and invalid data. (*Ledford Complaint* ¶ 13).

The Plaintiffs have further alleged that during approach to Schiphol Airport, the left radio altimeter erroneously determined and communicated to the autothrottle system that the aircraft was approximately eight feet below ground level when, in fact, the aircraft was approximately 1950 feet above the ground. (*Ledford Complaint* ¶ 13). As a direct result of the erroneous radio altimeter information, the autothrottle system – programmed by the pilots to maintain 144 knots – reduced the airspeed to well below 144 knots, causing the aircraft to enter an aerodynamic stall and crash. (*Ledford Complaint* ¶ 14).

At the deposition of Thomas Dodt, the Affiant to Defendant's *forum non conveniens* motion, plaintiffs established that if there were problems with the radio altimeters, Boeing's field support representatives in Turkey would have communicated those problems to Turkish Airlines. (*Dodt Dep.* at p. 45). Accordingly, the frontline of communications with Turkish Airlines would have been Boeing employees in Turkey, not in Washington State (*Dodt Dep.* at p. 48).

**B.    The Parties**

It is now undisputed that Boeing is a Delaware corporation and chose to have its headquarters in Chicago, Illinois, just a few blocks from the courthouse where this matter is pending. (*See Boeing's Answer to Plaintiffs' Request to Admit* No. 1) (hereinafter "*Boeing's*

4

*Ans. RTA*") (Exhibit "7" hereto). The Boeing Company's business is led by its Chief Executive Officer ("*CEO*"), Jim McNerney, who maintains his office in Chicago, Illinois. (*Boeing's Ans. RTA* No. 2). The CEO has general and active control of the company's business affairs. (*Boeing's Ans. RTA* No. 7). The CEO of the Boeing Commercial Planes division in Seattle, Washington reports directly to CEO, Jim McNerney. (*Dodt Dep.* at p. 25). The president of The Boeing Company also maintains his office in Chicago, Illinois. (*Boeing's Ans. RTA* No. 6).

Boeing maintains a fleet of corporate jets just outside of Chicago, Illinois, in Gary, Indiana. (*Boeing's Supplemental Response to Ans. RTA* No. 9, Exhibit "8"). There are five Challengers and two Boeing 737s in that fleet. (*Dodt Dep.* at p. 40). Boeing's employees, either executives in Chicago or high level executives in Seattle, Washington, fly to and from Chicago on those jets. (*Dodt Dep.* at p. 41). Boeing decides which Boeing employees get to ride in the corporate jets. (*Dodt Dep.* at p. 66).

Boeing employs people in all 50 states of the United States. (*Boeing Ans. RTA No.* 10). Boeing also employs persons in over 65 countries. (*Boeing Ans. RTA* No. 11). Boeing presently employs approximately 253 field representatives who interact with customers around the world. The Boeing Company training and flight services has more than 20 locations around the world. (*Boeing Ans. RTA* No. 3). Boeing employees travel around the world to market, explain the functioning of aircraft systems, and support the purchase of Boeing aircraft. (*Dodt Dep.* at p. 30). Boeing aircraft operate in and out of Chicago's O'Hare Airport and Midway Airport on a regular basis. (*Dodt Dep.* at p. 67-69). American Airlines, United Airlines and many of the other airlines that have operations in and out of both O'Hare and Midway use Boeing aircraft. (*Dodt Dep.* at p. 68). Boeing has recently announced that it intends to open a manufacturing facility in Illinois. (*See Boeing Press Releaset.*) (Exhibit "9").

The consolidated Plaintiffs are representatives of 100 of the 120 individuals who were injured in the crash and two of the nine individuals who died in the crash. While the majority of the plaintiffs and decedents are Dutch and/or Turkish residents, one of the plaintiffs who has filed suit is a United States citizen, domiciled in Florida (*See Ledford Complaint* ¶ 1; *Redacted Driver's License of Ronald Ledford*, Exhibit "10" ), and one Plaintiff is a United States resident alien. (*See Redacted Permanent Resident Card of Mert Icgoren*, Exhibit "11"). Other Plaintiffs are from Iran, Germany, Syria and Sudan. Additionally, at least one of the Plaintiffs has been in the United States receiving medical treatment in Washington, D.C. since June 8, 2009 and is continuing to receive such treatment in Washington, D.C. (*See Affidavit of Cuneyd Er,* Exhibit "12", hereto). At least four of the Plaintiffs have come to Chicago, Illinois for consultation with doctors as a result of the significant injuries they sustained in the crash. *(See Affidavits of Emre Alkan, Ali Ahmet Peynircioglu, Linda Thijssen-Lorenzo,* and *Sevgi Kalan-Suna*) (Exhibits "13", "14", "15" and "16").* Additional treatment in Chicago, Illinois was recommended to two of these individuals, and each of them intend to return to Chicago, Illinois for treatment. (*See Affidavits of Emre Alkan* and *Ali Ahmet Peynircioglu*).

### C. The Investigation

Members of the Dutch Safety Board from the Netherlands investigated the crash. (*Dodt Dep.* at p. 25). The wreckage, including the radio altimeters, is in the possession of the Dutch Safety Board in the Netherlands. (*Dodt Dep.* at pp. 25, 74). Joe Sedor, of the United States National Transportation Safety Board ("NTSB") in Washington, D.C., was designated as the U.S. Accredited Representative to assist in the investigation. (*See February 25, 2009 NTSB Press Release* and *Preliminary Report*, Group Exhibit "17"). Mr. Sedor was joined by three other NTSB investigators as well as technical advisors from the Federal Aviation Administration

6

("FAA"), Boeing and General Electric. (*Id.*). The U.S. team assisted with all aspects of the on-scene investigation. (*See U.S. Summary Comments on Draft Final Report*, Exhibit "18"). As part of the investigation, they visited the Honeywell facility in Phoenix, Arizona; General Electric Aviation, in Grand Rapids, Michigan; BAE Systems in Johnson City, New York; and the Thales facility in France. (*Dodt Dep.* at p. 62-64; *Dutch Safety Board Report* at p. 93).

> **D.      Relevant Witnesses**

Witnesses and evidence are scattered among different states (including Illinois) and countries.    As an example, seriously injured Plaintiff Cuneyd Er has identified damages witnesses who   live in Illinois, Indiana, New York, Pennsylvania, Wisconsin, Virginia, Washington, D.C., New Jersey, Massachusetts, the Netherlands, Germany, Turkey, France, Kazakhstan, Russia, Hungary and the Czech Republic. (*See Cuneyd Er Answer to Interrogatory No. 3*, Exhibit "19") (hereinafter "*Er Ans. Int's*").   Five witnesses from those locations have executed affidavits indicating that they will voluntarily come to Chicago, Illinois to testify and that it would be inconvenient for them to travel to Washington or more convenient for them to travel to Chicago, Illinois than Washington. (*See Affidavits of Salih Kandas, Ali Yurtsever* and *Cebrail Altindag, Group* Exhibit "20") (***Chicago, Illinois*** and ***Columbus, Ohio***); (*See Affidavit of Michael R. Yochelson, M.D.* Exhibit "21") (***Washington, DC***); (*See Affidavit of Mehmet Cuneyd Tiryaki*, Exhibit "22") (***Turkey***).   The Affidavit of Mehmet Cuneyd Tiryaki further establishes that while there _are_ direct flights from Turkey to Chicago, there _are not_ direct flights from Turkey to Washington State.

Cuneyd Er has also identified twelve treating physicians from the National Rehabilitation Hospital in Washington, D.C., where he has been receiving treatment since June 8, 2009.   (*Er Ans. Int's* No.'s 3 & 4).   Dr. Michael R. Yochelson, the Associate Medical Director of the

7

Neurological Program at the National Rehabilitation Hospital in Washington, DC, has executed an affidavit indicating that he will come to Chicago, Illinois to testify and that it would be more convenient for him to come to Chicago, Illinois than Washington State. (Exhibit "21"). There are also numerous therapists who assisted in Cuneyd Er's rehabilitation in Washington, D.C. (*See Affidavit of Cuneyd Er*, Exhibit "12"). He has also identified three individuals from the Rehabilitation Institute of Chicago who are believed to have information and knowledge regarding the injuries he sustained and/or regarding the type of rehabilitation plan his injuries necessitated. (*Er Ans. Int's* No. 4). His brother, Omer Er and his parents, Rahim Er and Nedret Er - who have been with him in Washington, D.C. since June 8, 2009 to assist in his care – have executed affidavits establishing that it would be more convenient for them to travel to Chicago, Illinois than Washington State. (*See Affidavits of Omer Er, Rahim Er* and *Nedret Er*, Group Exhibit "23").

As another example, seriously injured Plaintiff Ali Ahmet Peynircioglu intends on calling as damages witnesses the following individuals: Dervis Can Voral (Illinois); Pinar Zorlutura (Illinois); Efe Karanci (New York); Turgay Senlet (New York); Selen Esmerag Senlet (New Jersey); Zeha Peynircioglu (Washington, DC); and Selen Esmeray Senlet (New York). (*See Ali Ahmet Peynircioglu's Answer to Interrogatory No. 18*, Exhibit "24"). The two independent damages witnesses from Illinois have executed affidavits indicating that it would be inconvenient for them to travel to Washington State. (*See Affidavits of Dervis Can Voral and Pinar Zorlutura*, Group Exhibit "25"). In addition to these witnesses, Ali Ahmet Peynircioglu sought consultation from five doctors in Chicago, Illinois and intends to return to Chicago, Illinois for additional recommended treatment. (*See Affidavit of Ali Peynircioglu*) (Exhibit "14").

As a further example, seriously injured Plaintiff Emre Alkan intends on calling Geralvhee

8

(Jayvee) Bihis who resides in Chicago, Illinois as a damages witness. (*See Emre Alkan Answers to Interrogatory Nos. 3,and 18,* Exhibit "26"). She has executed an affidavit indicating that it would be inconvenient for her to travel to Washington State. (*See Affidavit of Geralvhee Bihis,* Exhibit "27"). In addition to these witnesses, Emre Alkan sought consultation from three doctors in Chicago, Illinois and intends to return to Chicago, Illinois for additional treatment recommended as a result of the consultations. (*See Affidavit of Emre Alkan*). (Exhibit "13").

Additionally, injured passengers Linda Thijssen-Lorenzo and Sevgi Kalan-Suna sought consultation from three doctors in Chicago, Illinois relating to the injuries they sustained. (*See Affidavits of Linda Thijssen-Lorenzo and Sevgi Kalan-Suna*). (Exhibits "15" and "16").

Seven medical providers who treated victims of the crash in the Netherlands have executed affidavits establishing that they will come to Chicago, Illinois to provide testimony regarding their care and treatment of the victims and that it is more convenient for them to come to Chicago to provide testimony than it would be for them to go to Washington State. (*See Affidavits of Rob Ruimschotel; Huub J.L. van der Heide; Paul P.E. Sival; Jessica Mellexus-Greben; Dr. Lucas Van Gerwen; Josine Arondeus*, and *Dr. HJM van Kuppevelt,* Group Exhibit "28").

Finally, an eyewitness to the crash has executed an affidavit establishing that he will come to Chicago, Illinois to testify and that it would be more convenient for them to travel to Chicago than Washington State. (*See Affidavi of Aernout van Cittes,* Exhibit "29").

While the 100 surviving passengers of flight TK1951 have chosen Chicago, Illinois as their forum and are all direct witnesses to the crash and its aftermath, Boeing has identified only one Washington State resident who indicated he would be inconvenienced by the Plaintiffs' forum; he is Simon Lee (*Dodt Dep.* at p. 26).

### E.  Evidence/ Documents

No physical evidence from the crash is in Boeing's possession; rather, it is in the possession of the Dutch Safety Board.  (*Dodt Deposition* at p. 25, 74).  Documents concerning the design, manufacture, assembly, testing, certification and customer support services for the subject aircraft are in the State of Washington.  However, Boeing, has already electronically produced 38,671 pages in Illinois through the liability and *forum non conveniens* discovery that has taken place to date (*See Transmission Letters from Kirkland & Ellis*, Exhibit "30")  clearly demonstrating that document "production" involves no inconvenience.  Moreover, Boeing itself has publicly stated that its Chicago headquarters is "designed with a vision of instant access to information by anyone from anywhere. * * * Boeing employees in Chicago are just a mouse click away from any Boeing facility, customer or supplier in 145 countries." (*See Boeing Begins World Headquarters in Chicago* (2001) (http://www.boeing.com/news/releases/2001/q3/nr_010904z.htm.) (Exhibit "31").  Boeing also has an internet service called *My Boeing Fleet* which it touts, in pertinent part, as follows:

* * * *

**Accessing MyBoeingFleet - -** Boeing customers can review an ever-increasing amount of Boeing proprietary information through this secure Internet site. . . . .

**Content - -** Currently, MyBoeingFleet offers registered users access to:

- **Maintenance Documents**
- **Engineering Drawings**
- **Flight Operations**
- **PART Page** (Spare parts online ordering system)
- **Boeing Digital Profile Drawings**
- **FLEET TEAM Digest and Resolution Process** (tracking and prioritizing resolution of in-service issues)
- **Online and e-mail notices of new service bulletins by**

10

- airplane model
- Airplane Tooling Services (Maintenance Tooling online ordering system)
- Technical Media Tracking
- Data and Services

http://www.boeing.com/commercial/aviationservices/myboeingfleet/
(Exhibit "32").

Thus, Boeing has access anywhere, including at its offices in Illinois, to documents that are relevant to this litigation through the *MyBoeingFleet* service website.

Finally, Turkish Airlines has a registered agent in Cook County, Illinois but does not have a registered agent and/or office in Washington State. (*See Illinois Corporate Record of Turkish Airlines, Inc.; Certificate of No Record of Turkish Airlines from Washington Secretary of State; and Affidavit of Dennis Fredrickson*, Group Exhibit "33"). Thus, as is further established below (*infra* at p. 19-21) as well as in the accompanying affidavit of Mark Rosen, access to documents and witnesses from Turkish Airlines is readily available in Illinois through the issuance and service of a subpoena on the Turkish Airlines registered agent, while access to such records if this action were to be transferred to Washington would be costly, inefficient and would require additional steps, including the possibility of opening of an action in Illinois. (*See Affidavit of Mark Rosen*, Exhibit "34"). Additionally, compulsory process of witnesses for hearing and trial from Turkish Airlines is available in Illinois but not in Washington. (*Id.*). Boeing, moreover, can serve Turkish Airlines through its agent in Chicago should Boeing decide to bring Turkish Airlines into the case.

III.   **LAW TO BE APPLIED**

The Illinois Supreme Court's most recent determination governing *forum non conveniens*

11

motions solidified the guidelines to be applied to all such motions. In *Langenhorst v. Norfolk Southern R. Co.*, 219 Ill.2d 430 (2006), the Court emphasized that it has "repeatedly noted that the *forum non conveniens* doctrine gives courts the discretionary power that should be exercised *only in exceptional circumstances* when the interest of justice require a trial in a more convenient forum." *Langenhorst*, 219 Ill.2d at 442 (emphasis in original).

The Court reiterated the test that all relevant factors viewed in their totality must "*strongly* favor transfer to the forum suggested by defendant" and that where neither the plaintiff's residence, nor the site of the crash is located in the chosen forum, plaintiff's choice of forum is entitled to less deference than would be accorded a plaintiff that resides in said forum, but that deference "is only *less* as opposed to *none*." *Langenhorst*, 219 Ill.2d at 443, 448. (emphasis in original).

Finally, our Supreme Court confirmed that a moving defendant cannot assert that a plaintiff's chosen forum is inconvenient to the plaintiff, but rather, must show that it is inconvenient to the defendant. *Langenhorst*, 219 Ill.2d at 444.

The principal authority relied on by the Supreme Court in *Langenhorst* for the foregoing principles is *First American Bank v. Guerine*, 198 Ill.2d 511 (2002), which specifically dealt with treatment of a product liability case in the context of *forum non conveniens* inquiry. In *Guerine*, our Supreme Court approved our Appellate Court's decision in *Hinshaw v. Coachmen Ind., Inc.*, 319 Ill.App.3d 269 (2001), which held that as the cause centered around a product liability claim, "any local interest on the part, say, of Woodford County [the site of the accident] is largely supplanted by a more general interest in the safety of Dodge Vans." *Guerine*, 198 Ill.2d at 523-24. *Langenhorst* explicitly rejected the notion that *Guerine* had ever been disapproved or

12

overruled. *Langenhorst*, 219 Ill.2d at 453.

Recently, in *Vivas v. The Boeing Company,* 392 Ill.App.3d 644 (1st Dist. 2009), our Appellate Court rejected Boeing's contention that it was entitled to a *forum non conveniens* dismissal from Illinois because there was no specific evidence in Illinois relating to a crash which occurred in Peru. The Court affirmed a ruling by Judge Maddux denying Boeing's motion. Post *Vivas,* Judge Maddux came to the same conclusion in another case involving a plane crash in Turkey where Boeing also suggested the case be moved to Washington State. (*See February 10, 2010 Order of Judge Maddux in Arik v. The Boeing Company, et al.,* Exhibit "35").

The Illinois Supreme Court has held that a court must consider both "the private and public interest factors" in deciding a *forum non conveniens* motion. *Langenhorst,* 219 Ill.2d at 443. The private interest factors include: (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary and real evidence; and (3) other practical problems that make trial of a case easy, expeditious and inexpensive. *Langenhorst,* 219 Ill.2d at 443-44, *quoting Guerine,* 198 Ill.2d at 516-17. The public interest factors include: (1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a count with little connection to the litigation; and (3) the administrative difficulties presented by adding further litigation to already-congested court dockets. *Id.*

This case does not present the required "exceptional circumstances" mandating that Boeing's suggested forum – Washington State – is "strongly favored" over Cook County. The private interest and public interest factors (and not just the Boeing employee witness factor that Boeing almost exclusively relies on) do not support dismissal especially since plaintiffs are

entitled to some deference in their choice of forum.

## IV. ARGUMENT

Regardless of whether a plaintiff's chosen forum is given maximum deference or slightly less, "the battle over forum begins with the plaintiff's choice already in the lead." *Guerine*, 198 Ill.2d at 521. The analysis centers on convenience; in order to deprive a plaintiff of his/her substantial right to select the forum for his/her case, a defendant must show that various convenience-related factors, considered as a whole, *strongly favor* transfer or dismissal. Defendant has not satisfied its heavy burden and the motion should be denied.

### A. PRIVATE INTEREST FACTORS FAVOR PLAINTIFFS' CHOSEN FORUM

#### 1. Illinois is a more convenient forum for the parties.

##### a. Illinois is the Plaintiff's chosen forum

Boeing cannot demonstrate that Illinois is an inconvenient forum. First, even though Plaintiffs were not Illinois residents, Illinois is *per se* convenient for them. *See Guerine*, 198 Ill. 2d at 518 ("[t]he defendant cannot assert the plaintiff's chosen forum is inconvenient to the plaintiff"). A plaintiff's decision to file his or her claims here is entitled to some deference even when the plaintiff is not a resident of the forum. *Id.* at 517-18 (noting that when a plaintiff chooses a forum that is neither the site of the injury nor the plaintiff's residence, that plaintiff is entitled to "somewhat less deference" but less deference is not none).[3]

---

[3] With respect to a foreign plaintiff, the greater the extent to which the plaintiff's choice of forum is motivated by legitimate reasons, the greater the deference that should be accorded to it. *See Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) (*en banc*). Thus, the greater the lawsuit's bona fide connection to the United States, the more difficult it is for a defendant to gain dismissal for *forum non conveniens*. *See Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). The deference to a plaintiff's choice of forum is further enhanced when, as here, the defendant resides or maintains a substantial presence in the chosen forum. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996) *Mercier Air v. Sheraton Int., Inc.*, 981 F.2d 1345, 1354 (1st Cir. 1992).

Plaintiffs brought their product liability actions against this American defendant to Boeing's home state to ensure that they could obtain jurisdiction over the defendant who bears responsibility for this crash and hold it accountable to the individuals who were injured or who lost their lives in this disaster. That reason alone is eminently reasonable and therefore deserving of considerable deference. *See Nortex,* 416 F.3d at 155 ("*Nortex's* decision to litigate in New York, where all defendants were amenable to suit (and where some reside or are incorporated) is properly viewed as a strong indicator that convenience, and not tactical harassment of an adversary, informed its decision to sue outside its home forum."); *Iragorri,* 274 F.3d at 72-73 ("[a] plaintiff should not be compelled to mount a suit . . . where she cannot be sure of perfecting jurisdiction over the defendant"). Thus, the Plaintiffs had entirely valid reasons for choosing this forum, and their choice should be entitled to substantial deference as well.

> **b.** **Boeing's corporate headquarters is in Chicago, Illinois and its products are in Illinois on a daily basis.**

Illinois is Boeing's home forum. Boeing's corporate headquarters is in Chicago, Illinois. Boeing conducts extensive business in Illinois. It markets, sells and distributes aircraft which fly into and out of O'Hare Airport and Midway Airport every day. (*Dodt Dep.* at pp. 67-69). Boeing's business is led by its CEO, who has general and active control of the company's business affairs; he maintains his office in Chicago, Illinois. (*Boeing's Ans. RTA* No.'s 2, 7). The CEO of the Boeing Commercial Planes Division in Seattle, Washington reports to the CEO in Chicago. (*Dodt Dep.* at p. 25). Our Supreme Court has held that "the extent and type of business" conducted by a defendant in the plaintiff's chosen forum were "appropriate considerations for the circuit court on a *Forum non Conveniens* motion." *Boner v. Peabody Coal*

15

*Company*, 142 Ill. 2d 523, 540 (1991) (finding that a defendant company's active operations in a county, which is characterized as "by no means marginal" was a relevant factor in a *forum non conveniens* analysis).

The Illinois Supreme Court held in *Kwasniweski v. Schaid*, 153 Ill. 2d 550, 555 (1992), that "it is all but incongruous for defendants to argue that their home [forum] is inconvenient." The Appellate Court, in *Ellis v. A.A.R. Parts Trading, Inc.*, 357 Ill.App.3d 723, 743 (1st Dist. 2005), affirmed the circuit court's denial of defendant's *forum non conveniens* motion in a case arising out of another foreign aircraft, using similarly harsh language in addressing Defendant's claims of inconvenience. The Appellate Court quoted the circuit court as stating "[I]t is incredulous for two Illinois resident corporations to argue that *their home state is inconvenient for them to litigate this matter*." (Emphasis in original). Nevertheless, Boeing persists.

Boeing's accusation that Plaintiffs are forum shopping is undermined because Plaintiffs lodged their claims in the jurisdiction where Boeing has its corporate headquarters i.e. Chicago, actively engages in business, i.e. Illinois, (where its planes fill the skies on a daily basis and where it recently announced that it intends to open a manufacturing facility) and where it maintains its fleet of airplanes. To the contrary, it is Boeing that is forum shopping.[4]

It is not an exaggeration to state that Boeing has never found any forum in any state in the United States to be convenient to defend its products arising from a crash in a foreign country, just as Boeing has not found any foreign forum to be inconvenient. *See, e.g., In Re Air Crash*

---

[4] Boeing asks this Court to dismiss these consolidated cases so that they can be refiled in Washington State. Though it references Turkey and the Netherlands as other possible fora in its moving brief, its motion is based solely on the argument that Washington State is the most convenient forum for this litigation. (*Def. Motion* at pp. 2 & 14; *Boeing's Supplemental Objections and Responses to Plaintiff's Interrogatory* No. 3, Group Exhibit "36"). Therefore, Boeing has waived any argument that the Court should consider dismissing the cases in favor of any other U.S. or foreign jurisdiction and this response does not address Boeing's references to those other jurisdictions.

*Disaster Near Palembang, Indonesia on December 19, 1997*, 2000 U.S. Dist. Lexis 22950 (W.D. Wash. 2000) (Boeing moved for and was denied, *forum non conveniens* dismissal of an action brought against it in Washington arising from an air crash in Indonesia.) Indeed, Boeing has repeatedly filed *forum non conveniens* motions indicating that it would voluntarily send its Washington based witnesses to all types of locations, including the following:

- **Indonesia** relating to two separate crashes (*See Boeing's September 8, 2010 Answers to Plaintiff's Request to Admit* No.'s 3 & 6, Group Exhibit "36") (hereinafter "*Boeing's Sept. 8, 2010 Ans. RTA*") (*Dodt Dep.* at p. 35);
- **Turkey** (*See Boeing's Sept. 8, 2010 Ans. RTA* No. 9);
- **Cameroon** (*See Boeing's Sept. 8, 2010 Ans. RTA* No. 11); (*Dodt Dep.* at p. 36);
- **Michigan** (as opposed to Cook County, Illinois) (*See Boeing's Sept. 8, 2010 Ans. RTA* No. 13);
- **France** (*See Boeing's Sept. 8, 2010 Ans. RTA* No. 18);
- **United Kingdom** (*See Boeing's Sept. 8, 2010 Ans.* RTA No. 21; and
- **Cyprus** and/or **Greece** (*See Boeing's Sept. 8, 2010 Ans.* RTA No. 24).

How strange that Boeing would find it convenient to send its witnesses from Washington State to places like Michigan, Indonesia, Turkey, Cameroon, France, the United Kingdom, Cyprus and/or Greece in other cases, yet it is somehow inconvenient for Boeing to bring its witnesses from Washington State to the forum of its World Headquarters, in Cook County, Illinois in this case. Boeing's forum shopping is obvious and transparent.

c. **Boeing has failed to identify witnesses who will be inconvenienced by proceeding in Illinois.**

The weakness of Boeing's *forum non conveniens* argument is underscored because its motion and accompanying papers neither identify witnesses it claims would be inconvenienced nor the subjects of their expected testimony. In fact, in his examination, Thomas Dodt admitted that he had only spoken with <u>one</u> individual in Washington State who said it would be inconvenient if he had to come to Illinois. (*Dodt Dep.* at p. 26). While Boeing has claimed

17

"inconvenience", it has not demonstrated any inconvenience. The Court, therefore, has been given no basis for granting Boeing's motion. As our Supreme Court and the First District has recognized, that is reason alone to reject its argument and deny its motion. *See Langenhorst*, 219 Ill. 2d at 442 (affirming denial of defendants' motion to transfer based, in part, on the absence of any affidavits from witnesses stating that the chosen forum was inconvenient for them); *See Glass v. DOT Transportation*, 393 Ill. App. 3d 829 839 (2009) (rejecting the defendant's "witness inconvenience" argument where they "fail to provide affidavits from any of the identified witnesses stating that Cook County is an inconvenient forum").

Furthermore, Boeing has not indicated that there are any witnesses whom it expects will refuse to testify voluntarily and the availability of compulsory process is only relevant if there are witnesses who refuse to volunteer to testify. Moreover, the unavailability of compulsory process is not a compelling concern unless the witnesses in question are "indispensable." *Illinois Tool Works v. Sierracin Corp.*, 134 Ill. App. 3d 63, 67-68 (1st Dist. 1985). Boeing has unquestionably failed to indicate the roles of any witnesses and has concomitantly failed to show that they are "indispensable" to their case. Furthermore, any witnesses who are employed by Boeing should pose no problem, as it is unlikely that Boeing's employees would decline Boeing's request to appear; moreover, Plaintiffs could compel their appearances pursuant to Supreme Court Rule 237(b).[5]

Illinois courts have clearly stated that the location of a party's employees is not relevant

---

[5] Practically speaking, Boeing's suggestion in the affidavit of Thomas Dodt that its employees will have to come to Chicago, Illinois for "several" trials is not true. As this Court is aware, in aviation disaster cases, several exemplar cases are routinely tried on one occasion at which time the issue of liability is determined for the remainder of the cases. Thus, to the extent there is a trial, Boeing's witnesses will in all likelihood not have to travel to Chicago, Illinois "several" times. Thomas Dodt agreed that if that were the case, it would not be as inconvenient for Boeing witnesses to come to Chicago. (*Dodt Dep.* at p. 28).

to analyzing how a change in forum would affect the court's ability to compel the appearance of witnesses insofar as each of the parties "may produce their own employees for a deposition or a trial without the benefit of subpoenas." *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill.App.3d 827, 835 (5th Dist. 2006).

       **d.**     **Boeing's fleet of corporate jets**

While claiming Illinois is an inconvenient forum, Boeing fails to inform the Court that it has a fleet of corporate jets just outside of Chicago, Illinois on which Boeing personnel are regularly transported to and from Chicago, Illinois. (*Dodt Dep.* at pp. 40-41, 67).

       **e.**     **Defendant has already utilized Illinois to litigate issues in this action.**

Interestingly, while Boeing claims that it is inconvenient to litigate this matter in Illinois, it has already brought a Motion to Dismiss based on preemption, which was fully briefed, argued and ruled upon by this Court. This belies Boeing's argument that Illinois is an inconvenient forum to litigate this action. Additionally, Boeing has already produced 38,671 pages of documents in this litigation, which are now located in Chicago, Illinois. Finally, Boeing has already requested damages information and document from the Plaintiffs. Plaintiffs, *Ledford, Er, Kaya* and *Alkan* have answered that written discovery and have produced damages documentation in their possession and are gathering supplemental documents. The remaining Plaintiffs will be answering the written discovery recently propounded by Boeing. In short, discovery in this Court is already well underway.

     **3.**     **The ease of access to sources of proof factor does not favor transfer to Washington State.**

        **a.**     **Non-Party witnesses/documents**

           **1.)**     **Access to documents and witnesses from Turkish Airlines is**

19

> **readily available in Illinois and would be more costly and difficult in Washington; compulsory process is available in Illinois as to Turkish Airlines witnesses but not in Washington State.**

Boeing entirely ignores that there may be relevant documents and witnesses from Turkish Airlines. Likewise, Boeing does not acknowledge that Turkish Airlines has a registered agent in Illinois but not in Washington State. This is an important factor for this Court to consider. As established in the Affidavit of Mark Rosen, (Exhibit "34" hereto) (hereinafter "*Rosen Aff.*") dismissing the suit from the Plaintiffs' chosen forum and moving it to Washington would make it more costly and inefficient for Plaintiffs to compel Turkish Airlines to produce relevant documents and to appear as a deponent. (*See Rosen Aff.*, ¶¶ 13 – 16, 25-41, 43").

Moreover, and of even greater significance, dismissing the lawsuit in Illinois and moving it to Washington would make it impossible for Plaintiffs to compel Turkish Airlines to appear as a witness at a hearing or trial. (*Rosen Aff.*, ¶¶ 12, 37-42). If the lawsuit remains in Illinois, by contrast, Plaintiffs will be able to compel Turkish Airlines to appear as a witness at a hearing or trial -- Turkish Airlines has a registered agent and presence in Illinois. (*Rosen Aff.*, ¶¶ 17-24).

The fact that dismissing the lawsuit would make it more costly for Plaintiffs to compel Turkish Airlines to produce documents or proof of witnesses provides another basis for denial of Boeing's motion. *See Vivas v. The Boeing Co.*, 392 Ill. App.3d 644, 658 (1st Dist. 2009) (factors to be considered in deciding a *forum non conveniens* motion include "the relative ease of access to sources of testimonial, documentary, and real evidence").

Of greater significance to defendant's *forum non conveniens* motion, however, is the fact that dismissing the lawsuit would eliminate Plaintiffs' ability to compel Turkish Airlines as a

witness at a hearing or trial. *See Vinson v. Allstate*, 144 Ill.2d 306 (1st Dist. 2009) (taking account of the fact that Illinois would "not have the subpoena power. . . to compel the attendance" of witnesses in the court's *forum non conveniens* analysis). It is perfectly sensible that motions to dismiss on grounds of *forum non conveniens* generally ought not to be granted if dismissal would eliminate plaintiff's ability to compel appearance of a material witness Filing a lawsuit in a court that has jurisdiction over a party and material witnesses – as Plaintiffs have done here – constitutes responsible lawyering, not illicit forum shopping.

      **2.)    Parties and non-party witnesses will be inconvenienced if they have to travel another 2,000 miles to Washington State.**

      Witnesses with material information relevant to product liability issues are located throughout the United States and many places overseas.

      Boeing's motion thus unfairly focuses almost exclusively on its own unidentified witnesses and ignores relevant non-party witnesses from Washington, D.C., Grand Rapids, Michigan and Phoenix, Arizona who took part in the investigation of the crash as well as other independent damages witnesses (from Illinois and other locations) who will be inconvenienced if this case were to proceed in Washington State as to this factor, Boeing fails to support the argument with any competent evidence such as an Affidavit from any non-party witnesses regarding any inconvenience to them if this case stays in Chicago, Illinois.[6]

---

[6] Boeing mentions that there may be unidentified former Boeing employee witnesses and witnesses from Thales, the manufacturer of the radio altimeter that failed who may be needed to testify at trial. However, Boeing does not provide the names and/or addresses of any such hypothetical witnesses or affidavits from them indicating their unwillingness to testify or that they will be inconvenienced. Additionally, Thales "witnesses" are a red-herring. There is no dispute that the radio altimeter failed. Radio altimeters fail. That's why there are two of them on the airplane. What is at issue here is the failure of Boeing to have logic in the Boeing systems that would take a radio altimeter failure into account. It is doubtful that Thales representatives would be necessary at trial. Additionally, to the extent they are necessary, they are not necessarily from Washington, they may be from France. (*Dodt Dep.* at

Conversely, although it is not the Plaintiff's burden to do so, the Plaintiffs have provided affidavits from numerous witnesses from Illinois and other locations indicating that it would be inconvenient for them to have to travel to Washington State or that Chicago, Illinois would be more convenient for them. Specifically, the Plaintiffs have provided the following:

- Affidavits from 5 independent Illinois witnesses who state that it will be inconvenient for them to travel to Washington State;
- Affidavits from 7 independent out-of-state witnesses who state that Chicago, Illinois is more convenient for them than Washington State;
- An Affidavit from Dr. Michael R. Yochelson, the Associate Medical Director of the Neurological Program at the National Rehabilitation Hospital in Washington, DC indicating that he will come to Chicago, Illinois to testify and it would be more convenient for him to come to Chicago, Illinois than Washington State.
- Affidavits from 7 independent treating physicians from the Netherlands who state that it is more convenient and less expensive for them to come to Chicago, Illinois to testify than it would be for them to travel to Washington State;
- An affidavit from an independent damages witness in Turkey which establishes that it is more convenient for him to come to Chicago to testify than it would be for him to travel to Washington State and which further establishes that there are direct flights from Turkey to Chicago, Illinois but that there are no such direct flights from Turkey to Washington (and in order to get to Washington, one of the connection flight possibilities is right through Chicago, Illinois).
- The identities of numerous physicians who have consulted and/or treated some of the Plaintiffs in Chicago, Illinois;
- The identities of 12 physicians and numerous other therapists from Washington, D.C. who provided treatment to one of the most seriously injured individuals who survived the crash.
- The identities of numerous other United States damages witnesses who live much closer to Chicago, Illinois than Seattle, Washington.

Plaintiffs have shown – and Boeing cannot dispute – that potential trial witnesses are scattered among numerous states, including Illinois, Wisconsin, Ohio, Washington, D.C., New York, New Jersey, Washington State, as well as other countries, including the Netherlands,

pp. 13-15; 22-23). Lastly, Boeing cannot demonstrate that any witness from France would be more inconvenienced by travelling to Illinois than to Washington State.

22

Turkey, Iran, Germany, Syria and Sudan and that it will be more convenient for all of these witnesses to testify in Chicago, Illinois than it will be for them to testify in Washington State. As such, Boeing cannot show that this factor "*strongly weighs*" in favor of transfer. *See Guerine*, 198 Ill. 2d at 526 (explaining that when witnesses are geographically scattered across a variety of forums including the Plaintiffs' forum, no single forum can claim a predominant connection to the litigation); *Vivas*, 392 Ill. App. 3d at 658-59.

Finally, all of the problems which may arise with respect to the unidentified Boeing witnesses if Plaintiffs' choice of forum is upheld will arise as to Illinois-based witnesses if the case were to proceed in Washington State.

**b.    Chicago is centrally located.**

Another factor for the court to consider is the fact that Chicago, Illinois is centrally located.  In the context of multidistrict litigation, numerous courts have held that Chicago is a proper place to transfer nationwide litigation. *See In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 128 F.R.D. 131 (J.P.M.L. 1989) (Multidistrict Litigation involving seven federal districts arising out of an aircrash disaster at Sioux City, Iowa was centralized to the Northern District of Illinois, Eastern Division); *see also In re Litigation Involving Butterfield Patent Infringement*, 328 F.Supp. 513, 515 (J.P.M.L. 1970) ("Since Chicago is geographically central, we think convenience of the parties will be served by transfer to the Northern District of Illinois"); *see also In re Folding Carton Antitrust Litigation*, 415 F.Supp. 384, 385 (J.P.M.L. 1976) ("Chicago's central location is another reason commending transfer to the Northern District of Illinois, inasmuch as the present litigation is nationwide").   This same type of reasoning is analogous to the *forum non conveniens* analysis here where the facts establish that

23

there are relevant witnesses in Chicago, Illinois (damages witnesses and doctors); Champaign, Illinois (damages witnesses); Indiana (damages witnesses); Wisconsin (damages witness); Washington, D.C. (damages witnesses and doctors); New York (damages witness and BAE Systems representatives from the Johnson City facility who were part of the Dutch Safety Board investigation which was performed in the United States); Phoenix, Arizona (Honeywell representatives from facility where flight control computers analysis/data extraction was done as part of Dutch Safety Board investigation and at which a Boeing representative was present); Grand Rapids, Michigan (GE representatives from facility where part of Dutch Safety Board inspection was conducted and at which a Boeing representative was present); and Washington State (the unidentified witnesses of Boeing), as well as numerous other cities on the East Coast. Thus, centrally located Chicago, Illinois is the most convenient forum for this litigation.

c.    **Documents and tangible evidence**

Boeing also contends that Washington is more appropriate because there is no evidence in Illinois and that documentary evidence as to the design, engineering and assembly as well as to the investigation is located in Washington. (*Boeing's Motion to Dismiss* at p. 9). This argument is a red herring for a number of reasons. First, Boeing has already produced 38,671 documents in this litigation, which are now located in Chicago, Illinois. In the 21st century, documents are scanned and delivered electronically. Second, Boeing has a customer support internet site called *MyBoeingFleet*, which as established above (*supra* at pp. 10-11) gives anyone, anywhere, access to documents that are relevant to this litigation. Moreover, Boeing boasts that its Chicago headquarters is "designed with a vision of instant access of information by anyone from anywhere. * * * Boeing employees in Chicago are just a mouse click away from any Boeing

24

facility, customer or supplier in 145 countries." (Exhibit "31" hereto).

As for any documents located in other states, including Washington State, it has been noted that documents can be transported with ease and at little expense considering "the increased technology of photocopying and the relative ease of shipping around the country." *Hays v. Fireman's Fund Mortgate Corp.,* 272 Ill. App. 3d 272, 649 N.E.2d 582, 586 (1st Dist. 1995) (citations omitted). Courts have recognized that obtaining records and documents is not improved by transferring a case to a different venue because today's technology allows documents to be copied and transported easily and inexpensively. *See, e.g. Woodward,* 368 Ill. App. 3d at 847-48. Thus, this factor does not strongly favor Washington.

### 3. All other practical considerations that make a trial easy, expeditious and inexpensive.

#### a. The ability to take depositions via telephone conference.

While Boeing claims that having to produce its witnesses from Washington State is a burden, Boeing fails to inform this Court that at those very Boeing facilities in Washington, there are numerous conference rooms which contain video teleconference facilities. (*Dodt Dep* at p. 43). Therefore, because depositions can easily be taken through the use of video teleconferencing facilities, as was done with the affiant to Boeing's *forum non conveniens* motion, Mr. Thomas Dodt, the presence of Boeing witnesses in Washington does not support Boeing's claim of inconvenience.

#### b. Location of attorneys.

Lastly, Plaintiff would point out that a trial in Chicago, Illinois would be more convenient for attorneys involved. Counsel for the overwhelming majority of the Plaintiffs are located in or

associated with downtown Chicago firms as are the counsel for Defendant Boeing. Other attorneys from Kirkland and Ellis defending this case are from Cook County, Illinois and Washington, D.C. None of the attorneys are from Washington State. The Illinois Supreme Court has stated that while little weight should be accorded this factor, a court may still consider it in the *forum non conveniens* analysis. *Dawdy*, 207 Ill. 2d at 179; *Woodward*, 368 Ill. App. 3d at 836.

### B.    PUBLIC INTEREST FACTORS FAVOR AN ILLINOIS FORUM

**1.    Interest in deciding "localized" controversy and propriety of asking Illinois citizens to serve on a jury in this case.**

Although these are normally listed as separate factors to consider, Plaintiff discusses them jointly because the same types of concerns arise as to both.

**a.)    Illinois residents have a strong interest in the safety of Boeing aircraft**

The "interest in deciding localized controversies locally" does not strongly favor Washington State because the plane crash involved in this occurrence did not occur in Washington or in Illinois. It is undisputed that Boeing aircraft fly in the skies of Illinois every day into and out of both O'Hare Airport and Midway Airport. (*Dodt Dep.* at pp. 67-69). Both American Airlines and United Airlines, a corporation with its principal place of business in Chicago (*Cook v. United Airlines*, 2009 WL 1727854 (D.Or. June 17, 2009), as well as many other airlines, have operations in and out of both O'Hare and Midway use Boeing aircraft. (*Dodt Dep.* at p. 67-69). Obviously, Illinois residents have a specific interest in the safety of Boeing aircraft which fly in the skies of Illinois and which are sold to Illinois resident, United Airlines. Illinois residents have a substantial interest in ensuring the safety of the products that its resident

26

corporations distribute throughout the world, particularly when that corporation has its world headquarters here in Illinois and sells those products to other Illinois corporations. *Woodward,* 368 Ill. App. 3d at 836 (noting that defendants were "American corporations with extensive foreign business dealings"); *Ellis,* 357 Ill. App. 3d at 743 (noting that defendant's "principal place of business" is in Illinois). While the location of a corporate headquarters is not a "dispositive" factor, it is still a factor that may be considered. *Gridley v. State Farm Automobile Insurance Co.,* 217 Ill. 2d 158 at 173 (2005).

Illinois jurisprudence to this effect was recently crystallized again in *Ammerman v. Raymond Corp.,* 379 Ill.App.3d 878 (1st Dist. 2008). *Ammerman* dealt with the doctrine of *forum non conveniens* in the context of a product liability claim sounding in strict liability and negligence against the defendant manufacturer of a forklift that allegedly caused the plaintiff's injuries. The court summarized Illinois law as follows:

> Another important principle guiding *forum non conveniens* review is that in cases where the primary issue centers around a products liability claim, the site of the accident caused by the allegedly defective product is less important because any local interest is largely supplanted by a more general interest in resolving a claim concerning an allegedly defective product and jury views of the accident site are generally unnecessary. *See, e.g., Brown v. Cottrell, Inc.,* 374 Ill.App.3d 525, 534 (2007) (noting that products liability claims "are not inherently local in flavor" and finding that a jury view of the accident site was not warranted); *Woodward v. Bridgestone/Firestone, Inc.,* 368 Ill.App.3d 827, 836 (2006), quoting *Hefner v. Owens-Corning Fiberglass Corp.,* 276 Ill.App.3d 1099, 1106 (1995) (recognizing that "while the forum where the injury occurred 'generally has a strong interest in the outcome of litigation, this general rule does not necessarily apply to cases involving complex products liability issues); *Hinshaw v. Coachmen Industries, Inc.,* 319 Ill.App.3d 269, 278 (2001) (finding that due to the inherent nature of products liability claims "any local interest * * * is largely supplanted by a more general interest in the safety" of the allegedly defective product and that the importance of a jury view was "diminished").

27

*Ammerman,* 379 Ill.App.3d at 885-86.

Given this general interest in products liability litigation, Illinois' interest in these cases is, at a minimum, equal to that of Washington State. When a defendant does business in or places products into the stream of commerce equally in both the chosen forum or any other possible forums proposed by the defendant, the public factor recognizing local interest in the controversy weighs equally to both places. *See Buettner v. Park E. Davis*, 217 Ill. App. 3d 316, 327, 576 N.E. 2d 1125 (5th Dist. 1991). Indeed, our Supreme Court has held that the "extent and type of business" conducted by a defendant in the plaintiff's chosen forum were "appropriate considerations for the circuit court on a *forum non conveniens* motion. *Boner,* 142 Ill. 2d at 540 (finding that a defendant company's active operations in a county, which is characterized as "by no means marginal," was a relevant factor in a *forum non conveniens* analysis). Boeing cannot argue that it does not actively conduct business in Cook County, Illinois. In other words, the public interest factor in this case does not strongly favor transfer.

b.     **It is not unreasonable to have Illinois residents to serve on a jury.**

For the same reasons that Illinois has such a strong interest in this case, it would not be unfair to impose the burden of jury duty on Illinois citizens, least of all Cook County citizens who live and work in close proximity to O'Hare Airport and Midway Airport and fly in and out of those airports. Certainly, given the fact that the world headquarters of Boeing is in Chicago, Illinois and that its aircraft fly on a daily basis into and out of O'Hare International Airport as well as Midway Airport, such safety concerns make it reasonable to ask citizens of Illinois to serve on a jury in this case. Certainly, Illinois citizens and residents have a great interest in air safety. Moreover, Illinois citizens unquestionably have an interest in assessing the conduct of a

28

corporation headquartered in Illinois relating to the safe design of products manufactured and sold by the corporation.

Thus, this factor does not strongly favor Washington State.

**2.       Court congestion.**

Boeing posits that Cook County courts are substantially more congested than those of King County in Washington State and further argues that there are "staggering differences in the volume and time to disposition of cases." (Def. Mem. at pp. 12-13). Boeing's arguments are misguided and misleading for a number of reasons.

First and foremost, this case has been specially assigned to the individual calendar of this Court. Thus, the parties can get to trial as expeditiously as the discovery process will allow, and the time to disposition of cases between King County and Cook County is therefore truly not relevant. The Illinois Supreme Court has held that "[w]hen deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens of its own docket." *Langenhorst*, 219 Ill. 2d at 451, 848 N.E.2d 927. Additionally, this court is already intimately familiar with this case due to Boeing having already brought a Motion to Dismiss based on Preemption, which was denied on August 18, 2010. Moreover, as to the time to disposition of cases factor, this Court should note that Boeing has already unnecessarily caused a three (3) month delay in these cases moving forward through its improper removal of the *Ledford, Er, Kaya* and *Alkan* cases to Federal Court.

Second, Boeing misrepresents the number of civil cases actually filed in King County in Washington State and fails to inform the Court of the subject matter of the cases pending in Cook County and King County. Boeing states in its brief that "King County, the county encompassing

29

Renton and Seattle, Washington had only 10,403 new civil cases in 2007." (*Def. Mem.* at p. 12). However, an analysis of the document referred to by Boeing actually indicates that this number reflects only the Domestic Violence Petition, Civil Harassment and Unlawful Detainer cases that were filed in the King County Superior Court in 2007. It does not include the additional 15,617 other "civil cases" that were filed for a total of 26,020 "civil cases". A careful review of the Cook County Court's statistics provided by the Defendants show that in jury case filings in Cook County in excess of $50,000.00 (like the one at issue here), only 10,176 cases were filed in 2007 in Cook County.

Additionally, there are only 53 judges in King County, Washington, Superior Court (King County Superior Court Judges (last updated Aug. 27, 2010), http://www.kingcounty.gov/courts/SuperiorCourt/judges.aspx) (Exhibit "37"), while there are 415 judges in Cook County, Illinois, 58 of which are in the law division. (www.cookcountycourt.org/about/directory/results.asp). (Exhibit "38").

Based on the above, this factor does not weigh strongly in favor of transfer.

Even if the Court congestion factor weighed in favor of Washington State – *it does not* – the court congestion factor, by itself, is relatively insignificant. *Guerine* 198, Ill. 2d at 517. Thus, this factor does not strongly favor Washington State.

## V.   CASES RELIED UPON BY DEFENDANT ARE ENTIRELY DISTINGUISHABLE

In support of its motion, Boeing principally relies on the *Gridley, Vinson, Quaid* and *Berbig* cases, each of which are entirely distinguishable, as is further established below.

In *Gridley v. State Farm Automobile Insurance Co.,* 217 Ill. 2d 158 (2005), the Illinois Supreme Court found that the Louisiana plaintiff had no grounds to pursue Illinois class action

claims based on the Illinois Consumer Fraud Act. Thus, the only claim that remained was the plaintiff's bare individual claim to recover against State Farm for a failure to claim a salvage title for his car. All of the events relating to that claim took place in Louisiana, which was the forum suggested as strongly favored by the movant and found to be so by the Illinois Supreme Court. Additionally, all the evidence concerning the case was exclusively in Louisiana. In *Vinson v. Allstate*, 144 Ill.2d 306 (1991), the Illinois Supreme Court found that the Missouri plaintiff had no grounds to pursue their indemnification suit against his insurer for the loss of their home (which was located in Missouri) in Illinois where, with one exception, everyone Allstate interviewed about the fire had a Missouri address; both witnesses who observed the insured premises within 24 hours of the fire were Missouri residents; eight of the nine occurrence witnesses resided in Missouri; and Illinois courts did not have subpoena power in Missouri (and consequently the defendant would not have been able to subpoena these eight witnesses).

In *Quaid v. Baxter Healthcare Corporation,* 392 Ill.Ap.3d 757 (1st Dist. 2009), the Illinois Appellate Court found that the California plaintiff had no grounds to pursue their products liability action against the manufacturer of a mislabeled medicine vial where plaintiffs resided in the forum suggested by the defendant; all nonparty fact witnesses were likely to be residents of the defendant's suggested forum, California; California law was likely to apply; California had a "paramount interest" as demonstrated by the swift action its regulatory agency took after the incident to investigate and discipline the hospital (and where only California residents had an interest in the quality of medical care rendered in California hospitals); and where all of the non-party witnesses who could testify as to the how and why the over-medication error occurred as well as the post-occurrence medical providers lived in California

31

and were beyond the subpoena power of Illinois.

*Berbig v. Sears Robuck & Co.*, 378 Ill. App. 3d 185 (2007) is also distinguishable. In *Berbig*, the accident giving rise to the litigation occurred in the suggested forum, Minnesota; the plaintiff resided in the suggested forum, Minnesota; the plaintiff purchased the lawn mower from a Sears store located in the suggested forum; the plaintiff received medical treatment in the suggested forum, and the only named witnesses who were present at the scene before or after the incident lived in the suggested forum. Furthermore, there was no indication of any significant evidence or witnesses that were in the plaintiff's chosen forum, and a trial in Illinois would preclude the jury from viewing the accident site.

Here, unlike *Gridley, Vinson, Quaid and Berbig,* the Plaintiffs: (1) do not live in Boeing's suggested forum; (2) have established that the witnesses and evidence are widely scattered in the United States and throughout the world, including in their chosen forum; (3) have established that the occurrence did not happen in the forum suggested by Boeing; and (4) have established that compulsory process will not be available as to some potentially relevant witnesses in the forum suggested by Boeing. Thus, this case is entirely distinguishable from each of the cases Boeing relies on.

## CONCLUSION

The private and public interest factors in this case do not present exceptional circumstances that strongly favor dismissal under the doctrine of *forum non conveniens.* If anything, the factors strongly confirm that Chicago, Illinois, the Plaintiffs' chosen forum, is the appropriate forum for this case. Boeing has failed to meet its burden; Plaintiffs' choice of forum, Illinois, should not be disturbed by this Court.

Dated:  September 16, 2010

_____
Robert A. Clifford
Kevin P. Durkin
Thomas K. Prindable
Michael S. Krzak
Colin H. Dunn
CLIFFORD LAW OFFICES, P.C.
Attorneys for Plaintiff
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602
(312) 899-9090
Attorney No.: 32640
**Attorneys for Plaintiffs:**
AKBAS (2010 L 007557)
ALKAN (09 L 13797)
ATMAN (10 L 3556)
ATMAN-OZMEN (10 L 7558)
BAHÇECİOĞLU (10 L 3556)
BAHÇECİOĞLU (10 L 7563)
ER (09 L 013791)
IZ (10 L 7568)
KALAN (10 L 7569)
KALAN-SUNA (10 L 7571)
KAYA (09 L 13794)
KORAL (10 L 7574)
PEYNIRCIOGLU (10 L 7575)
THIJSSEN-LORENZO (10 L 7577)
VERCAN (10 L 7578)
YILDIRIM (10 L 7580)
YILDIRIM (10 L 7579)

Todd Smith
Brian LaCien
Power Rogers and Smith, PC
Three First National Plaza
70 West Madison Street
Suite 5500
Chicago, Illinois 60602
312-236-9381
312-236-0920 Fax

33

Marc S. Moller
Justin T. Green
Anthony Tarricone
Orla M. Brady
Kreindler & Kreindler LLP
100 Park Avenue
New York, New York 10017
212-687-8181
212-972-9432 Fax
Attorneys for Plaintiffs
MERT ICGOREN;
MERT ICGOREN, as Special Administrator
of the Estate of BULENT ICGOREN, deceased;
HAJAR ALARIACHI;
LISETTE VAN DER HAM;
FIGEN EREN;
JIHAD ALARIACHI;
SANIYE ALBOSTAN;
SANIYE ALBOSTAN; as Mother and Next Friend
of BUSRA ALBOSTAN, a minor;
SANIYE ALBOSTAN, as Mother and Next Friend
of ERDEM ALBOSTAN, a minor;
UGUR BAYAT;
HASRET DEMIR;
SAMIRA SULIMAN IDRIS;
SABINA MIR;
MOHAMMAD BAGHER MIRZAEI;
YOUSHA RADPARVAR;
PETRUS MARIA VAN STEENOVEN;
JOHAN HENDRIK WITZEL;
SELCUK ARDA;
MUNEVER ARSLAN-KUS;

MUNEVER ARSLAN-KUS, as Mother and Next
Friend of KUBRA ARSLAN-KUS, a minor,
MUSTAFA ASAL;
PATRICK ENRICO BOOTS;
SIPKE CORNELIS DE WIT;
YUSUF EKINCI;
MEHMET VEYSEL GOZUKARA;
BEKIR KAYA;
SHAHID MIR;
KEWLAWATIE MOENNASING;
RANA MUSAJEVA;

34

BELAL NOUNI;
MARIA JACQUELINE SUSANNA ROOVERS;
JACOBUS SCHINKEL;
AHMET TEKGOZ;
SAFDAR ALI TIRMAZI;
SEFER BARIS;
MORAD CHAMROUKI;
VEDAT DEMIR;
MURAT GOCMUS;
MUSTAFA GUMUS;
CAROLINE CHRISTINE HAZELEGER HOLLE;
ATANAS BORISSOV STILIJANOV;
AHMAD SULAIMAN;
MARINUS VAN SPRONSEN;
JANNEKE VAN TIL;
GULCAN TAKAK WITZEL;
MUSTAFA KEMAL YASAR;
WILHELMINA ZANTINGE MEIRING;
AHMET SEN;
SALIH YILDIZ;
NURI TAS;
ALI YARDIM;
GEORGE ANICHUKWU;
THEODORUS MARIA VAN STEENOVEN,
As Father and Next Friend of IRIS VAN
STEENOVEN, a minor;
HENK HEIJLOO,
FREDERIK WILLEM HENDRIK GIMPEL,
GERARDA ANTOINETTE GIMPEL-
VELDHOEN,
RONALD LEDFORD

Monica Kelly
Ray Willis Welcher
RIBBECK LAW CHARTERED
505 N. Lake Shore Drive
Chicago, Illinois 60611
(312) 822-9999
**Attorneys for Plaintiffs:**
YANGO, et al. (10 L 3556)

35