**3**

Firm ID No. 90443

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

CUNEYD ER, )
                   Plaintiff, )
      vs. )
                         )    Case No. 2009 L 013791
THE BOEING COMPANY, a corporation, )
                         )    Judge Dennis J. Burke
             Defendant. )
                         )

OHRAN KAYA, Individually, and as Father )
and Next Friend of MAYA NIL KAYA, a )
minor, and YURDANUR KAYA, )
                         )
                Plaintiffs, )
      vs. )    Case No. 2009 L 013794
THE BOEING COMPANY, )
                         )    Judge Dennis J. Burke
             Defendant. )
                         )

RONALD LEDFORD, )
                         )
                Plaintiff, )
      vs. )    Case No. 2009 L 013786
THE BOEING COMPANY, a corporation, )
                         )    Judge Dennis J. Burke
             Defendant. )
                         )

## MEMORANDUM IN SUPPORT OF THE BOEING COMPANY'S
## MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

Michael B. Slade (6274231)
Daniel R. Lombard (6290671)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200

March 2, 2010                *Attorneys for Defendant The Boeing Company*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

     A.    The Parties .................................................................................................2

     B.    The Accident ..............................................................................................3

     C.    The Accident Investigation .......................................................................4

III.  ARGUMENT .......................................................................................................4

     A.    The Court's Authority to Dismiss These Actions Under the Doctrine of *Forum Non Conveniens* Is Well Established. ............................................4

     B.    Plaintiffs' Choice of Forum Deserves Little Deference. ..........................5

     C.    Washington is an Available and Adequate Forum. ..................................6

     D.    The Private Interest Factors Relevant to a *Forum Non Conveniens* Analysis Overwhelmingly Favor Dismissal. ...........................................7

     E.    The Public Interest Factors Relevant to a *Forum Non Conveniens* Analysis Weigh Strongly in Favor of Dismissal...................................11

     F.    This Case Is Different from *Vivas*. .......................................................13

IV.   CONCLUSION..................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Berbig v. Sears Roebuck & Co.,*
378 Ill. App. 3d 185, 882 N.E.2d 601 (1st Dist. 2007)........................................ 1, 9, 11, 15

*Certain Underwriters at Lloyd's, London v. Ill. Cent. R.R. Co.,*
329 Ill. App. 3d 189, 768 N.E.2d 779 (2d Dist. 2002) ...................................... 6

*Dawdy v. Union Pac. R.R. Co.,*
207 Ill. 2d 167, 797 N.E.2d 687 (2003) ........................................................ passim

*Eads v. Consol. Rail Corp.,*
365 Ill. App. 3d 19, 847 N.E.2d 601 (1st Dist. 2006).................................... 5, 6

*Gridley v. State Farm Mut. Auto. Ins. Co.,*
217 Ill. 2d 158, 840 N.E.2d 269 (2005) ........................................................ passim

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947).......................................................................................... 4

*Hoffer v. Infospace.com, Inc.,*
102 F. Supp. 2d 556 (D.N.J. 2000) .............................................................. 7

*International Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement et al.,* 326 U.S. 310 (1945)........................................................................... 7

*Kamel v. Hill-Rom Co., Inc.,*
108 F.3d 799 (7th Cir. 1997) ........................................................................ 7

*Kourdoglanian v. Yannoulis,*
227 Ill. App. 3d 898, 592 N.E.2d 322 (1st Dist. 1992)................................... 13

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981)........................................................................................ 6

*Quaid v. Baxter Healthcare Corp.,*
392 Ill. App. 3d 757, 910 N.E.2d 1236 (1st Dist. 2009)........................... passim

*Skidmore v. Gateway W. R.R. Co.,*
366 Ill. App. 3d 238, 852 N.E.2d 857, 860-862 (5th Dist. 2006)...................... 9

*Stein v. Volkswagen of Am., Inc.,*
135 Ill. App. 3d 127, 481 N.E.2d 1022 (1st Dist. 1985)................................. 5

*Vinson v. Allstate,*
144 Ill. 2d 306, 579 N.E.2d 857 (1991) ........................................... 5, 9, 10, 11

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Vivas v. Boeing Co.*,
    392 Ill. App. 3d 644, 911 N.E.2d 1057 (1st Dist. 2009) ............................................. 15, 16

*Whirlpool Corp. v. Certain Underwriters at Lloyd's London*,
    295 Ill. App. 3d 828, 692 N.E.2d 1229 (1st Dist. 1998) .................................................. 14

*Woodward v. Bridgestone/Firestone, Inc.*,
    368 Ill. App. 3d 827, 858 N.E.2d 897 (5th Dist. 2006) .................................................... 13

*Wright v. Jack Hozack Co.*,
    No. CV-00-734-ST, 2000 U.S. Dist. LEXIS 17383 (D. Or. Oct. 11, 2000) ...................... 8

### Rules

Illinois Supreme Court Rule 187 ............................................................................................... 2

Illinois Supreme Court Rule 23(e) ........................................................................................... 13

## I.    INTRODUCTION

Defendant, The Boeing Company ("Boeing"), respectfully brings this *forum non conveniens* motion because this case belongs in the State of Washington, not in Illinois. The doctrine of *forum non conveniens* is designed for cases like this one, where the barest venue requirements are satisfied, but it makes absolutely no sense for the case to proceed here.

This is a case brought by ***out-of-state*** Plaintiffs concerning the crash on ***foreign*** soil of an aircraft operated and maintained by a ***foreign*** company. So far as Boeing is aware, not a single witness, relevant document, or piece of physical evidence is located within Illinois. Indeed, the ***only*** link these cases have to Illinois is Boeing, which assembled the 737 involved in the accident, but Boeing's connection to this litigation is centered entirely in Washington State. The sole basis for even considering venue in Illinois is that Boeing's corporate headquarters is in Chicago. But when the plaintiffs, the witnesses, and the evidence are not located in the State, the presence of a corporate headquarters in Illinois does not justify proceeding here. *See Berbig v. Sears Roebuck & Co.,* 378 Ill. App. 3d 185, 882 N.E.2d 601 (1st Dist. 2007); *Gridley v. State Farm Mut. Auto. Ins. Co.*, 217 Ill. 2d 158, 840 N.E.2d 269 (2005). The State of Washington is far more sensible than Illinois:

- The accident aircraft was designed and assembled in Washington, not Illinois;

- The 737 program is based in Washington, not Illinois;

- Boeing's air safety team (accident investigators assisting the NTSB in this case) is based in Washington, not Illinois;

- The engineers who designed and assembled the 737, and many of its component systems, are located in Washington, not Illinois;

- The people who wrote manuals for the 737 are in Washington, not Illinois;

- Boeing personnel present at the testing of equipment on the accident aircraft are in Washington, not Illinois;

- Documents concerning the design, assembly, or maintenance procedures for the 737 are in Washington, not Illinois;

- Documents related to Boeing's communications with airlines and component manufacturers concerning the 737 are in Washington, not Illinois.

Because all the private and public interest factors that must be considered in a *forum non conveniens* analysis strongly favor proceeding in Washington rather than Illinois, Boeing respectfully requests dismissal under Illinois Supreme Court Rule 187 and the common law doctrine of *forum non conveniens* in favor of proceedings in Washington.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiffs Er and the Kaya family are believed to be non-U.S. citizens. Only one of the plaintiffs, Ronald Ledford, alleges that he is a U.S. citizen, and Mr. Ledford alleges that he is domiciled in Florida. *Ledford v. Boeing Co.*, No. 2009-L-013786 (Cir. Ct. Cook Cty) (Ledford Compl. ¶ 1.).[1] Plaintiffs were passengers on a Turkish Airlines flight from Istanbul that crashed on approach to Schiphol Airport near Amsterdam, the Netherlands. According to press reports, most of the passengers on board were Turkish. (Ex. 1, *Turkish plane crash in Amsterdam*, BBC News, Feb. 25, 2009, *available at* http://news.bbc.co.uk/2/hi/europe/7909683.stm (last visited Feb. 8, 2010).) None of the Plaintiffs alleges that they live in Illinois or received medical treatment in Illinois. Indeed, Plaintiffs do not allege that they have *any* connection to Illinois whatsoever.

---

[1]    The plaintiffs in the two cases that have been consolidated for pretrial discovery purposes are (1) Cuneyd Er and (2) Ohran Kaya, individually, and as father and next friend of Maya Nil Kayam, a minor, and Yurdanur Kaya. Boeing anticipates that Plaintiff Ledford will also move for pretrial consolidation (for discovery purposes). *Ledford v. Boeing*, No. 2009-L-013786 (Cir. Ct. Cook Cty.) In addition, one other case involving this accident has been filed against Boeing, and although that case had been removed to federal court, Boeing has since filed a consent to remand that case to the Circuit Court of Cook County. *Alkan v. Boeing*, 1:09–cv–07813 (N.D. Ill.).

Boeing is a Delaware corporation. (*See* Ex. 2, Aff. of Thomas K. Dodt ("Dodt Aff.") ¶ 5.) Boeing's Commercial Airplanes Division is headquartered in Washington. (*Id.*) The accident aircraft, a Boeing 737, was manufactured in 2001 in Washington. (*Id.* ¶¶ 3, 4.) Boeing's operations related to drafting and distributing manuals and other information relating to the aircraft, as well as training related to 737s, are also based in Washington. (*Id.* ¶ 5, 16.) Boeing's corporate headquarters are located in Chicago, Illinois, but none of the design, manufacturing, or engineering functions at issue in this suit are conducted there. (*Id.*)

The accident aircraft was operated by Turkish Airlines. (Compl. ¶ 3.) Turkish Airlines is the national airline of Turkey. It operates principally in Europe. Turkish airlines took delivery of the accident aircraft in 2002 in Washington. (Ex. 2, Dodt Aff. ¶ 4.)

The component on the accident aircraft that Plaintiffs allege malfunctioned, a radio altimeter (Compl. ¶ 11), was manufactured by Thales, a French company with offices in Washington State. (Ex. 2, Dodt Aff. ¶ 6.) Thales has no office in Illinois. (*Id.*)

**B.     The Accident**

On the morning of February 25, 2009, Flight 1951 crashed on approach to Schiphol Airport near Amsterdam. (Compl. ¶ 12.) The flight originated in Istanbul and had a planned destination of Amsterdam. (*Id.* ¶ 3.) The flight had no scheduled stops anywhere near the United States, let alone Illinois. (Ex. 2, Dodt Aff. ¶ 3.)

Of the 129 people onboard, 120 survived, although many were injured. (*Id.* ¶ 3.) Plaintiffs allege that the accident was caused by a malfunction of a radio altimeter, a device that provides data regarding the aircraft's altitude below 2,500 feet. (Compl. ¶¶ 5, 11.) According to Plaintiffs, the radio altimeter's alleged malfunction caused the aircraft's autothrottle to reduce the throttle level position, reducing airspeed, and ultimately causing the accident in a field just north of the airport. (*Id.* ¶¶ 11, 12.)

3

### C.     The Accident Investigation

The investigation into the accident is ongoing.  The Dutch Safety Board ("DSB") is leading the investigation and has not yet released a final report.  The NTSB was appointed as the Accredited Representative to the DSB.  (Ex. 2, Dodt Aff. ¶ 8.)  The FAA, Turkish Airlines, and Boeing each sent representatives to Amsterdam to assist and monitor the investigation.  (*Id.* ¶¶ 8, 9.)  All of the Boeing personnel involved in the accident investigation are based in Washington. (*Id.* ¶ 8.)  No phase of the investigation has had any connection to Illinois.  (*Id.* ¶¶ 8-11.)

## III.    ARGUMENT

### A.     The Court's Authority to Dismiss These Actions Under the Doctrine of *Forum Non Conveniens* Is Well Established.

Although the Illinois venue statute provides that an action can be commenced in the county of residence of any defendant who is joined in good faith, 735 ILCS 5/2-101, if more than one potential forum exists, the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum.  *Dawdy v. Union Pac. R.R. Co.*, 207 Ill. 2d 167, 171, 797 N.E.2d 687, 693 (2003).  Specifically, the doctrine allows this Court to decline jurisdiction and direct that the lawsuit proceed in an alternative forum that can better serve the convenience of the parties and the ends of justice.  *Id.*  As explained in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), a court "may resist imposition upon its jurisdiction" where the balance of private and public interests demonstrates that the plaintiff's chosen forum is a *forum non conveniens*.  *See Dawdy*, 207 Ill. 2d at 171-72, 797 N.E.2d at 693.  Illinois courts use the same *forum non conveniens* analysis employed by the federal courts, weighing the private interest factors affecting the litigants and the public interest factors affecting the court.  *See id.*[2]

---

[2]   Of course, the federal courts and courts from other jurisdictions may apply these same private and public interest factors differently than the Illinois state courts; accordingly, this motion is based on caselaw from the Illinois state courts.

The fundamental premise of *forum non conveniens* is convenience: convenience of the litigants, the witnesses, the court, and the jurors who are pressed into service. *Stein v. Volkswagen of Am., Inc.*, 135 Ill. App. 3d 127, 129, 481 N.E.2d 1022, 1023 (1st Dist. 1985); *see also Gridley*, 217 Ill. 2d at 169, 840 N.E.2d at 276-77; *Dawdy*, 207 Ill. 2d at 171-72, 797 N.E.2d at 693. For example, in *Eads v. Consol. Rail Corp.*, 365 Ill. App. 3d 19, 25, 847 N.E.2d 601, 607 (1st Dist. 2006), the court reversed denial of a *forum non conveniens* dismissal where the defendant merely did business in Illinois, but the accident occurred in another state and all the relevant witnesses were located in other states. Here, where most of the evidence related to the design and manufacture of the accident aircraft is located in Washington, Washington is far more convenient than Illinois, which "has no practical connection to this case." *Vinson v. Allstate*, 144 Ill. 2d 306, 310, 579 N.E.2d 857, 859 (1991).

There is broad, but not unlimited discretion to grant or deny a motion to dismiss on the grounds of *forum non conveniens*. The First District has made clear that where "a plaintiff pursues a foreign forum despite a motion to dismiss, the plaintiff is taking on a calculated risk of reversal on appeal—*forum non conveniens* motions have been granted by reviewing courts even after claims have been tried to verdict." *Eads*, 365 Ill. App. 3d at 26, 847 N.E.2d at 608 (reversing *forum non conveniens* ruling after trial had been held where accident occurred in Indiana and all other evidence was in Indiana or states other than Illinois) (emphasis in original).

## B.    Plaintiffs' Choice of Forum Deserves Little Deference.

Plaintiffs' decision to bring this case in Illinois is entitled to little deference because Plaintiffs have no connection to the State. *Dawdy*, 207 Ill. 2d at 173-74, 797 N.E.2d at 694. In contrast to a situation in which a plaintiff chooses his "home forum" or the site of the accident or injury, which would be afforded deference, "a foreign plaintiff's choice deserves less deference." *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (internal quotation marks

omitted)). In fact, Illinois courts have specifically warned against deferring to a "plaintiff's choice" where, as here, the plaintiff is foreign to Illinois, and "it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules." *Dawdy*, 207 Ill. 2d at 174, 797 N.E.2d at 694 (quoting *Certain Underwriters at Lloyd's, London v. Ill. Cent. R.R. Co.*, 329 Ill. App. 3d 189, 196, 768 N.E.2d 779, 785 (2d Dist. 2002)) (brackets in original); *see also Quaid v. Baxter Healthcare Corp.*, 392 Ill. App. 3d 757, 766-77, 910 N.E.2d 1236, 1244-45 (1st Dist. 2009) (same). Here, where Illinois is neither home to the Plaintiffs nor the site of the accident giving rise to Plaintiffs' claims, the Plaintiffs' choice of Illinois as a forum is entitled to little deference.

## C. Washington is an Available and Adequate Forum.

The State of Washington is an available and adequate forum. An alternate forum is available where "all parties are amenable to process and are within the forum's jurisdiction." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). Boeing employs tens of thousands of people in Washington and maintains significant operations there; there is no question that Boeing is amenable to process and subject to jurisdiction in Washington. (Ex. 2, Dodt Aff. ¶ 5); *International Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement et al.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (finding "due process requires only that in order to subject a defendant to a judgment in personam . . . he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") There is also no question that the State of Washington is an adequate forum, as recognized by several courts. *See, e.g., Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 571 (D.N.J. 2000); *Wright v. Jack Hozack Co.*, No. CV-00-734-ST, 2000 U.S. Dist. LEXIS 17383 (D. Or. Oct. 11, 2000).

**D.** **The Private Interest Factors Relevant to a *Forum Non Conveniens* Analysis Overwhelmingly Favor Dismissal.**

In evaluating the private interest factors, Illinois courts look at "the convenience of the parties, the relative ease of access to sources of testimonial, documentary and real evidence, and all other practical problems that make trial of a case easy, expeditious and inexpensive, such as the availability of compulsory process to secure the attendance of unwilling witnesses." *Gridley*, 217 Ill. 2d at 173, 840 N.E.2d at 279. In this case, because the facts and circumstances of the accident at issue have no connection to Illinois, the private interest factors tilt decidedly away from Illinois and toward Washington—the location of the vast majority of the witnesses and documentary evidence located in the United States.

*Location of Witnesses.* None of the witnesses likely to be called to testify in this suit is located in Illinois. (Ex. 2, Dodt Aff. ¶¶ 15-21.) On the other hand, the majority of the U.S.-based witnesses—the individuals with information about the accident aircraft—are located in Washington, where Boeing's commercial aircraft division is located. These individuals include Boeing's employees involved in the design, engineering or manufacturing functions related to the accident aircraft and the 737 program in general. (*Id.* ¶¶ 5, 16.) The Boeing engineers with knowledge about the 737's radio altimeters, which Plaintiffs allege malfunctioned on the accident aircraft, are located in Washington. (*Id.*) Thales, the manufacturer of radio altimeters installed on the accident aircraft, has a facility in Washington. (*Id.* ¶ 6.) The Thales personnel who assist in the installation and testing of radio altimeters used on the 737 are located in Washington. (*Id.* ¶¶ 6, 17.) Moreover, Boeing's Air Safety employees involved in the investigation of this accident work out of Boeing's Washington facilities. (*Id.* ¶ 8.)

In cases where few, if any, witnesses are located in the forum selected by the plaintiff, Illinois courts routinely dismiss the case in favor of the forum where the witnesses are located. *See, e.g., Gridley*, 217 Ill. 2d at 171, 840 N.E.2d at 277-78 (granting *forum non* dismissal in

favor of Louisiana, where most witnesses were located); *Skidmore v. Gateway W. R.R. Co.*, 366 Ill. App. 3d 238, 241-42, 852 N.E.2d 857, 860-862 (5th Dist. 2006) (granting dismissal in favor of Missouri, where most witnesses were located). The First District's decision in *Berbig* is precisely on point. In *Berbig*, the plaintiff filed a product liability action in Cook County even though no significant witnesses were located in Illinois, the plaintiff did not reside in Illinois, the product at issue was not manufactured in Illinois, and the accident did not occur in Illinois. The Court dismissed the case in favor of a Minnesota forum, where much of the evidence and many of the witnesses were located. 378 Ill. App. 3d at 190, 882 N.E.2d at 606. Importantly, the court reached this result notwithstanding the fact that Sears' headquarters were located in Illinois. *Id.*

Further, it is not clear that Thales (the manufacturer of the radio altimeters on the accident aircraft) or its employees could be compelled to testify in Illinois, since Thales does not have an office here. *See Vinson*, 144 Ill. 2d at 312, 579 N.E.2d at 860 (weighing inability to compel attendance of witnesses in favor of *forum non conveniens* dismissal). The same problem is presented for any former Boeing employees who, if the case proceeds in Illinois, would not be subject to compulsory process. The availability of such witnesses is one of the specific private interest factors highlighted by the Illinois Supreme Court in *Gridley* as a factor that can sway a *forum non conveniens* determination. 217 Ill. 2d at 173-74, 840 N.E.2d at 279 ("Illinois courts do not have subpoena power in Louisiana, so other than its employees in Louisiana, State Farm would not be able to compel the attendance of the Louisiana witnesses in Illinois."); *see also Quaid*, 392 Ill. App. 3d at 775, 910 N.E.2d at 1251 (noting that Illinois courts do not have subpoena power in other states and weighing the "lack of compulsory process to secure unwilling witnesses" in favor of dismissal). Availability aside, Boeing and its witnesses will be inconvenienced by a trial in Cook County, since most (if not all) of the Boeing witnesses with knowledge about this case are located in Washington. (Ex. 2, Dodt Aff. ¶¶ 5, 16.) Many of them

8

have air safety responsibilities at Boeing's facilities in Washington. Travel to Cook County for at least four trials, and potentially dozens more, will be a burden. [3] (*Id.*)

On the other hand, Plaintiffs will not be inconvenienced in Washington. All of Plaintiffs' witnesses, including those with information regarding Plaintiffs' alleged damages (such as medical service providers, most of whom are presumably located where Plaintiffs live) will have to travel regardless whether the cases are heard in Illinois or Washington. (*Id.* ¶¶ 15-18.)

***Physical and Documentary Evidence.*** There is no evidence in Illinois. (*Id.* ¶¶ 12, 13.) Evidence as to the design, engineering, and assembly of the accident aircraft and 737s in general is in Washington. (*Id.* ¶ 13.) Any information sought from Boeing related to the investigation of the accident (to the extent not protected by Annex 13) would also be located in Washington. (*Id.*) Boeing's corporate headquarters in Illinois has no evidence. (*Id.* )

***Boeing's Headquarters Is Not Enough to Keep the Cases in Illinois.*** The Illinois Supreme Court has held that even where a company is "headquartered in Illinois . . . the fact that a corporation does business within a county in Illinois does not affect the *forum non conveniens* analysis." *Gridley*, 217 Ill. 2d at 172, 840 N.E.2d at 278 (citing *Vinson*, 144 Ill. 2d 306, 579 N.E.2d 857). In *Vinson*, our Supreme Court explained that because it is "assumed on a *forum non conveniens* motion that the court has jurisdiction over the defendant, the fact that Allstate conducts business within the county is not the only factor the court should consider in its analysis." 144 Ill. 2d at 311, 579 N.E.2d at 860. The court then held that the trial court had "clearly abused its discretion when it weighed [the fact that Allstate conducts business within the

---

[3]     Counsel for the Plaintiffs in these cases and in the related actions have publicly stated that they represent dozens more claimants who intend to file additional complaints arising out of the same Turkish Airlines crash, but have not yet done so. *See, e.g.,* http://www.cliffordlaw.com/news/firm-news/chicago-and-dutch-law-firms-retained-by-11-families-inturkish-airlines-crash,     http://www.kreindler.com/kreindler_news/news_current/2009-06-Turkish_Flight-1951.html.

county] in conjunction with the other private and public interest factors relevant here." *Id.* at 312, 579 N.E.2d at 860. Similarly, in *Berbig*, 378 Ill. App. 3d at 190, 882 N.E.2d at 606, which, again, is very much on point, the First District reversed the trial court's denial of a *forum non* dismissal, concluding that the trial court "relied too heavily" on the fact that Sears had its principal place of business in Illinois, when the other private and public interest factors weighed heavily in favor of a Minnesota forum.

Further, in *Quaid*, the First District affirmed a *forum non conveniens* dismissal in a case against Baxter, even though Baxter was headquartered in Illinois. *Quaid*, 392 Ill. App. 3d at 760, 775, 910 N.E.2d at 1239, 1252. The out-of-state plaintiffs in *Quaid* brought a products liability lawsuit in Cook County, despite the fact that the alleged injury did not occur in Illinois and there were few connections to the State other than the Defendant's headquarters. *Quaid*, 392 Ill. App. 3d at 760-61, 910 N.E.2d at 1239-40. As in *Quaid*, the fact that Boeing's headquarters is located in Illinois is simply not enough to survive *forum non* dismissal where there is no other connection to the State. *Id.* In fact, this litigation presents a stronger case for dismissal than *Quaid* because here, unlike in *Quaid* (where some of the defendant's Cook County-based employees were likely witnesses), it is very unlikely that *any* of Boeing's Illinois employees would be called to testify at trial. *Id.* at 767-68, 910 N.E.2d at 1245-46. Illinois simply does not factor into this suit in any respect. [4]

---

[4] Given the lack of any evidence in Illinois, even the Netherlands and Turkey have more contacts with this litigation than Illinois. As a result, there would be a better case for this litigation to proceed even in one of those locations than for it to stay in Illinois. The fact that Plaintiffs nevertheless filed suit in Illinois, where no evidence is located, underscores that their forum choice should be afforded little deference.

**E.** **The Public Interest Factors Relevant to a *Forum Non Conveniens* Analysis Weigh Strongly in Favor of Dismissal.**

In addition to the private interest factors, the public interest factors also weigh in favor of transfer for essentially the same underlying reason: the complete absence of any substantive connection between this suit and Illinois. The public interest factors include: "the interest in deciding controversies locally; the unfairness of imposing trial expenses and the burden of jury duty on residents of a forum that have little connection to the litigation; and the administrative difficulties presented by adding litigation to already congested court dockets. . . ." *Gridley*, 217 Ill. 2d at 174-75, 849 N.E.2d at 280.

The first factor, Illinois's interest in deciding controversies locally, weighs in favor of dismissal. Illinois has no substantive connection to this controversy, and thus has no interest in deciding it locally. "Merely conducting business" in the chosen forum does not affect the *forum non conveniens* consideration regarding local controversy since proper venue is assumed in a *forum non conveniens* motion. *Dawdy*, 207 Ill. 2d at 181-82, 797 N.E.2d at 699. A Washington court would have much more of a local interest in deciding this case than Illinois, because the aircraft was designed and built in Washington by people who live and work in Washington. *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 836, 858 N.E.2d 897, 907 (5th Dist. 2006) (where a product was manufactured in Illinois, finding "Illinois and, specifically, Macon County have a strong public interest in ensuring the safety of products manufactured in their forums").

The second public interest factor—the unfairness of imposing trial expenses and the burden of jury duty on residents of a forum that has little connection to the litigation—also weighs heavily in favor of dismissal. *See Gridley*, 217 Ill. 2d at 175, 840 N.E.2d at 280 (concluding that "the residents of Illinois should not be burdened with jury duty given the fact that the action did not arise in, and has no relation to, Illinois"); *Kourdoglanian v. Yannoulis*, 227

11

Ill. App. 3d 898, 903, 592 N.E.2d 322, 326 (1st Dist. 1992) ("[A] trial is an expense to the public, and our taxpayers should not be required to pay for litigation which is unrelated to Illinois, nor should our citizens be burdened by sitting on juries in these cases."). Were the trials in these cases to proceed before an Illinois court, the Illinois taxpayers would be left funding, and the jurors deciding, cases involving foreign and out-of-state plaintiffs who have sued as a result of a plane crash that happened in a foreign country, involving an aircraft operated by a foreign airline that was designed and manufactured in the State of Washington. Again, Washington makes more sense than Illinois.

Finally, the last public interest factor—the administrative difficulties presented by adding litigation to already congested court dockets—weighs in favor of dismissal. Comparing Cook County courts against the Washington courts shows that Cook County is burdened with a significantly higher caseload volume than Washington . *See Kourdoglanian*, 227 Ill. App. 3d at 903, 592 N.E.2d at 326 ("The docket of the circuit court of Cook County is sufficiently crowded to the point where congestion is of great concern, a factor we must consider before burdening Illinois courts with additional nonresident litigation."). For example, in 2007, Cook County had 404,524 new civil cases filed. (*See* Ex. 3, 2007 Annual Report of the Illinois Courts, *Statistical Summary*, at 29 (*available at* http://www.state.il.us/COURT/SupremeCourt/AnnualReport/ 2007/StatsSumm/2007_Statistical_Summary.pdf).) In contrast, King County, the county encompassing Renton and Seattle, Washington, had only 10,403 new civil cases in 2007. (*See* Ex. 4, King County Superior Court, Caseflow, at 1, *available at* http://www.kingcounty.gov/courts/SuperiorCourt/performance/caseflow.aspx.) The average time for disposition of a civil case in 2007 in Cook County was over 37 months, whereas in King County, 96% of civil cases are resolved within 24 months. (Ex. 3 at 55; Ex. 4 at 4.)

12

These are staggering differences in the volume and time to disposition of cases. The final public interest factor thus weighs in favor of dismissal for *forum non conveniens*. *Quaid*, 392 Ill. App. 3d at 775, 910 N.E.2d at 1251 (finding "the [S]upreme [C]ourt has 'repeatedly recognized that it is appropriate to consider the congested conditions of the docket in the plaintiff's chosen forum'") (quoting *Dawdy*, 207 Ill. 2d at 181, 797 N.E.2d at 698). Given the absence of any meaningful substantive connection to the Illinois forum, there is simply no justification for further burdening the already oversubscribed courts of Cook County. *See Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828, 838, 692 N.E.2d 1229, 1236 (1st Dist. 1998) ("The Cook County circuit court is the largest unified county court system in the country, with the congestion concomitant to that distinction.").

The public interest factors simply do not weigh in favor of Illinois. *Berbig*, 378 Ill. App. 3d at 190, 882 N.E.2d at 606.

### F.      This Case Is Different from *Vivas*.

Finally, Boeing is certainly aware of the First District's recent opinion affirming denial of a *forum non conveniens* motion in a case involving a foreign plane crash. *See Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 645, 661, 911 N.E.2d 1057 (1st Dist. 2009).[5] But this case differs from *Vivas* for at least two reasons. *First*, this is *not* a case where the "defendants did not seek an action in another state," leaving the Court to decide between litigation in Illinois or dismissal in favor of a non-U.S. forum. *See id.* at 645, 911 N.E.2d at 1059. Indeed, the *Vivas* court specifically recognized that if the *Vivas* defendants had sought dismissal in favor of "either []" Connecticut or Washington, where the aircraft and its engines were designed, manufactured and

---

[5]     Boeing is also aware of the First District's order in the *Thad Thornton v. Hamilton Sundstrand Corp.*, No. 07 L 004642 (1st Dist. Aug. 31, 2009), which also involved an aircraft accident on foreign soil. Because the decision was issued as a Supreme Court Rule 23(b) order, it is not precedential. *See* Ill. Sup. Ct. R. 23(e).

assembled," that motion "would have posed a different question, and *may have received a different answer*." *See id.* at 661, 911 N.E.2d at 1072 (emphasis added). In this case, Boeing *is* seeking dismissal in favor of Washington, "where the aircraft . . . [was] designed," and so Boeing's motion should "receive[] a different answer" from the motion in *Vivas. Id.*

Second, the potential witnesses and evidence located in the United States are not "scattered among different states," as was the case in *Vivas. Id.* at 659, 911 N.E.2d at 1069. In *Vivas*, the plaintiffs sued Boeing and United Technologies Corporation (the Connecticut-based manufacturer of the engines on the subject aircraft). *Id.* at 645, 911 N.E.2d at 1059. The Court observed that U.S.-based witnesses and evidence were located in both Washington and Connecticut. *Id.* at 648-52, 911 N.E.2d at 1059. In this case, Boeing is the only defendant, Boeing's contacts with this case are centered in Washington (as described above), and there is accordingly no problem presented by a "scattering" of significant U.S.-based witnesses among different states. Simply put, the overwhelming majority of the U.S.-contacts to this case are located in Washington, not in Illinois.

## IV.    CONCLUSION

For the reasons described above, this Court should dismiss this action on the basis of *forum non conveniens* in favor of the State of Washington.

14

Dated: March 2, 2010

Respectfully submitted,

Michael B. Slade (6274231)
Daniel R. Lombard (6290671)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200

Craig S. Primis, P.C. (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
655 15th St., N.W.
Washington, DC 20005
Tel.: (202) 879-5000
Fax: (202) 879-5200

*Attorneys for Defendant The Boeing Company*

## CERTIFICATE OF SERVICE

I, Daniel R. Lombard, one of the attorneys for Defendant The Boeing Company, certify that I caused the foregoing **DEFENDANT THE BOEING COMPANY'S MEMORANDUM IN SUPPORT OF THE BOEING COMPANY'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*** to be served by facsimile and United States Mail on March 2, 2010, upon:

Todd Smith
**Power Rogers and Smith, PC**
Three First National Plaza
70 West Madison Street, 55th Floor
Chicago, IL 60602
(312) 236-9381

Marc S. Moller
Justin Green
Orla M. Brady
**Kreindler & Kreindler LLP**
100 Park Avenue
New York, NY 10017
(212) 687-8181

Anthony Tarricone
**Kreindler & Kreindler LLP**
277 Darthmouth Street
Boston, MA 02116
617-424-9120

*Attorneys for Plaintiff RONALD LEDFORD*

Robert A. Clifford
Kevin P. Durkin
Michael S. Krzak
Colin H. Dunn
**Clifford Law Offices**
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602
(312) 899-9090

*Attorneys for Plaintiffs EMRE ALKAN,
CUNEYD ER and OHRAN KAYA*


_____
Daniel R. Lombard

# EXHIBIT 1



---

# Turkish plane crash in Amsterdam

**A Turkish Airlines plane has crashed on landing at Amsterdam's Schiphol international airport, killing nine people and injuring 84, six critically.**

The plane, carrying 127 passengers and seven crew, crashed short of the runway near the A9 highway. It broke into three pieces, but did not catch fire.

Three of those killed are crew members. Dutch officials say most of the passengers on board were Turkish.

It remains unclear why the plane, en route from Istanbul, crashed.

The Boeing 737-800 aircraft came down at 1031 local time (0931 GMT), several hundred yards (metres) short of the runway. It had left Istanbul's Ataturk Airport at 0622 GMT.

At a news conference in Amsterdam, officials confirmed that all the bodies had been removed from the plane.

> SCHIPHOL ACCIDENTS
> - **27 October 2005** : A fire at the airport's detention centre killed 11 people and injured 15
> - **4 April 1994** : Three people were killed and 13 seriously injured when a KLM flight carrying 24 people crashed on landing
> - **4 October 1992** : An El Al Boeing 747 cargo plane crashed into an apartment block after takeoff, killing 43 people

Investigators have found the flight data recorders from the plane. They will be sent for expert analysis.

Emergency services spokeswoman Ineke van der Zande told an earlier news conference that six people were in a critical condition and 25 were severely wounded.

Another 24 passengers had suffered light injuries, she said, with the injuries of another 31 still to be determined.

She said 84 people altogether had been taken using 60 ambulances to 11 hospitals in the surrounding area.

Michel Bezuijen, mayor of the Haarlemmermeer municipality under which Schiphol airport falls, said the passenger list was being studied to establish the nationalities and identities of those on board.

"As far as I know there are no more passengers in the plane," he said. "We cannot say anything about the cause at the moment. The priority... is providing help and care."

Earlier, Candan Karlitekin, head of Turkish Airlines' board of directors, told reporters in Turkey the plane had been properly maintained.

"We have checked the plane's documents and there is no problem concerning maintenance," he is quoted as saying by AP.

Turkish Transport Minister Binali Yildirim said it had been "a miracle" that there were not more casualties, AP reports.

"The fact that the plane landed on a soft surface and that there was no fire helped keep the number of fatalities low," he said.

One passenger aboard the plane, Kerem Uzel, told Turkish news channel NTV that the plane's landing had been announced when they were at an altitude of 600m (2,000ft).

"We suddenly descended a great distance as if the plane fell into turbulence. The plane's tail hit the ground... It slid from the side of the motorway into the field."

**White sheets**

Television footage from the scene showed rescue workers laying out white sheets on what appeared to be bodies.

Relatives of passengers who were waiting at the airport have been taken to a sports hall at a nearby village.

Airport spokeswoman Mirjam Snoerwang said Turkish Airlines had organised a special flight to Schiphol, due to arrive at 1710 GMT, for family members of those on the plane which crashed.

Tomas Friedhoff, a student who was cycling past the scene, told BBC News he had seen the plane appearing to glide through the air, having lost all propulsion, before hitting the ground.

"The plane was nose up and the tail section was at a 45-degree angle. The tail section broke down first, which broke off," he said.

"And seconds after the crash people started exiting through the tail section...

"I saw dozens of people making it out very quickly, and as I was about to dial 911 the first sirens were noticeable, and within five minutes there were 10 or 15 ambulances."

Telecom worker Nikolai van der Smagt, who was driving past the airport moments after the crash, told BBC News he saw the plane lying in three pieces in a field just 60m from the A9 motorway.

He said: "The first people were just getting off the plane and they looked confused. There was a lot of dust, but no fire."

All flights were suspended, but the airport has since re-opened. The A9 motorway remains closed.

The last crash involving a Turkish Airlines plane was in 2003, when at least 65 people died in an accident in eastern Turkey.

Schiphol airport has six runways and one major passenger terminal. In 2007, it handled 47 million passengers, ranking fifth in Europe.

Story from BBC NEWS:
http://news.bbc.co.uk/go/pr/fr/-/2/hi/europe/7909683.stm

Published: 2009/02/25 19:02:59 GMT

© BBC MMX

# EXHIBIT 2

Firm Number 90443

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| CUNEYD ER, <br>                Plaintiff, <br> vs. <br> THE BOEING COMPANY, a <br> corporation, <br>                Defendant. | Case No. 2009 L 013791 <br><br> Judge Dennis J. Burke |
| OHRAN KAYA, Individually, and as <br> Father and Next Friend of MAYA NIL <br> KAYA, a minor, and YURDANUR <br> KAYA, <br>                Plaintiffs, <br> vs. <br> THE BOEING COMPANY, <br><br>                Defendant. | Case No. 2009 L 013794 <br><br> Judge Dennis J. Burke |
| RONALD LEDFORD, <br>                Plaintiff, <br> vs. <br> THE BOEING COMPANY, a <br> corporation, <br>                Defendant. | Case No. 2009 L 013786 <br><br> Judge Dennis J. Burke |

## AFFIDAVIT OF THOMAS K. DODT IN SUPPORT OF DEFENDANT
## THE BOEING COMPANY'S MOTION TO DISMISS
## ON THE GROUNDS OF FORUM NON CONVENIENS

I, Thomas K. Dodt, declare as follows:

1.    I am employed as Chief Engineer, Air Safety Investigation for The Boeing

Company ("Boeing") and have served in that position since March 2008. Before that, I had

served as Deputy Chief Engineer, Air Safety Investigation since November 2004. I have worked for Boeing for a total of 28 years. I work and reside in the State of Washington. As part of my job duties, I am responsible for supervising the activities of Boeing's Air Safety Investigators. One of the roles of Boeing's Air Safety group is to assist and support government authorities in the investigation of an aircraft accident or incident.

2.      This affidavit is based both on my personal knowledge and on information collected and provided to me by other Boeing employees. I believe the information below is accurate and correct in all respects. It is offered in support of Boeing's *forum non conveniens* motion. I am competent to testify to the statements herein and would so testify if called to do so.

3.      *The February 25, 2009 Turkish Airlines Accident.* On February 25, 2009, a Turkish Airlines 737-800 passenger plane en route from Istanbul, Turkey, crashed on approach to Schiphol Airport just outside of Amsterdam in the Netherlands (the "February 25, 2009 Turkish Airlines Accident"). The accident flight, flight 1951, had no scheduled stops in the United States. The Plaintiffs allege that while on approach the aircraft's left radio altimeter, which is a digital device that detects and transmits to aircraft systems and displays to the flight crew the aircraft's elevation above ground level, malfunctioned and provided erroneous data to the aircraft's autopilot and autothrottle systems. The Plaintiffs further claim that the malfunctioning radio altimeter led to a premature autothrottle retard which caused a significant loss of airspeed and a near-stall condition. The pilots failed to maintain positive control of the aircraft, and as a result, it crashed approximately 1,500 meters from Runway 18R at Schiphol airport. Of the 129 people onboard, 120 survived, although many passengers were injured.

2

4. *The February 25, 2009 Turkish Airlines Accident Aircraft.* The accident aircraft was designed, manufactured, and tested by Boeing at its Renton, Washington facility from 2001-2002. The accident aircraft was delivered to Turkish Airlines in 2002 in Washington.

5. Boeing was founded in 1916 in the Puget Sound region of Washington State and its major manufacturing and engineering operations remain there today. The Boeing Company is a corporation organized and existing under the laws of the State of Delaware. While Boeing's corporate headquarters are located in Illinois, its Commercial Airplanes Division is based in the State of Washington. Presently, Boeing employs more than 157,000 employees in 49 states and 70 countries. Approximately 72,300 of those employees are located in the State of Washington, including 55,000 in Boeing's "Commercial Airplanes" division. (*See* Boeing Employment Numbers, *available at* http://www.boeing.com/employment/employ ment_table.html (last visited Feb. 2, 2010).) Only a limited group of Boeing's executive management and legal counsel are located in Chicago (approximately 1,200 total employees, or 0.7 percent of the Boeing workforce). Boeing's activities in connection with the design, manufacture, assembly, testing, certification, flight manuals, operations manuals, maintenance manuals, training programs, and customer support services for the Boeing 737 model aircraft were and are based predominantly in the State of Washington. This includes those activities related to the evaluation, and incorporation of Boeing 737 model aircraft radio altimeter and auto-flight systems.

6. Thales Group, a manufacturer and provider of components and services for commercial and military aircraft, manufactured the radio altimeters for the accident aircraft. Thales Group has its headquarters in France, and has a facility located in Seattle, Washington. (*See* Thales Group "Global Presence," *available at*

3

http://www.thalesgroup.com/Group/Global_Presence/ (last visited Feb. 2, 2010).) The original radio altimeters installed on the crash aircraft were tested and delivered to Boeing's assembly line in Renton, Washington from a Thales facility located in Seattle, Washington. Publicly available information published by Thales states that Thales has no offices or facilities in Illinois. (*See* Thales Group "U.S. Locations" *available at* http://www.thalesgroup.com/ Countries/United_States/About_us /U_S__Locations/ (last visited Feb. 2, 2010).)

7. To my knowledge, Turkish Airlines is a corporation based in Turkey. *(See* 2008 THY Annual Report *available at* http://wwwdownload.thy.com/download/investor_relations /annual_reports/ 2008_Faaliyet_Raporu_en.pdf ((last visited Feb. 2, 2010).)

8. ***The Official Accident Investigation.*** Because the February 25, 2009 Turkish Airlines Accident occurred in the Netherlands, Annex 13 to the Convention on International Civil Aviation provided that Dutch authorities — and specifically, the Dutch Safety Board — were responsible for the official investigation into the accident. In accordance with Annex 13, the U.S. National Transportation Safety Board (NTSB) was appointed as an Accredited Representative to the Dutch Safety Board ("DSB"). The U.S. Federal Aviation Administration (FAA), and Boeing each sent representatives to Amsterdam to assist and support the investigation as Technical Advisors to the NTSB. Generally, when Boeing is asked to assist in the investigation of an aircraft accident or incident, a member of the Boeing Air Safety Investigation group is assigned to coordinate Boeing's support to that investigation. In this case, a Boeing Air Safety Investigator employed at our Renton, Washington facilities was assigned to coordinate Boeing's assistance to the investigation of the February 25, 2009 Turkish Airlines Accident.

4

9.     While in the Netherlands, representatives from the Dutch Safety Board, the NTSB, the FAA, and Turkish Airlines, as well as the Boeing Air Safety Investigator employed at Boeing's Renton, Washington facilities, examined the wreckage of the aircraft and the accident site for physical evidence relating to the accident.

10.     The wreckage of the aircraft is stored in the Netherlands. Certain components of the aircraft were tested at Boeing's Seattle area facilities as part of the investigations during the weeks of September 21, 2009, and December 7, 2009, although to Boeing's knowledge those components remain in the custody of Dutch authorities.

11.     Throughout the investigation, Boeing engineers located in Renton, Washington and in the Seattle, Washington area supported the investigation by providing data relating to the aircraft model and performing simulations using a simulation cab and desktop simulators.

12.     *The Location of Physical Evidence.*  I am not aware of any physical evidence from the accident located in Chicago or elsewhere in the State of Illinois.

13.     *The Location of Documents.*  I am not aware of any documents relevant to this suit that are located in Illinois. Boeing maintains custody and control over documents relating to the design, manufacture, assembly, testing, certification, flight manuals, operations manuals, maintenance manuals, training, and customer support services of the 737 model aircraft in the State of Washington.  All of Boeing's documentary evidence of the investigation into the February 25, 2009 Turkish Airlines Accident is located in the State of Washington.

14.     I am not aware of any relevant documents in the possession of Turkish Airlines or the Thales Group that are located in Illinois.

5

15.     *The Location of Witnesses.*   I am not aware of any likely witnesses with knowledge or information relevant to this accident who are located in Illinois.

16.     To the extent that there are Boeing witnesses with information relevant to this suit, they are located in the State of Washington — not Illinois.   These witnesses may include Boeing employees with knowledge of the design, manufacture, assembly, testing, certification, flight manuals, operations manuals, maintenance manuals, training, and customer support services of the 737 model aircraft, all of whom are located in the State of Washington.   Further, all Boeing employees with relevant knowledge regarding the investigation into the February 25, 2009 Turkish Airlines Accident are also located in the State of Washington, not Illinois.   It would be a burden to Boeing for these witnesses, all of whom are based in Washington State and are responsible for the safe design and operation of Boeing's commercial aircraft, to travel to Cook County for several trials.

17.     To my knowledge, Thales employees with knowledge of information relevant to this suit (including, potentially, the engineering personnel involved in the testing and installation of the radar altimeters on the accident aircraft) are not located in Illinois.   Similarly, I am aware of no employee of Turkish Airlines with relevant knowledge or information who is located in Illinois.

18.     Only Plaintiff Ronald Ledford has disclosed his state of residency; none of the other Plaintiffs who have filed a lawsuit relating to this accident have disclosed their state of residency or citizenship.   To the best of Boeing's current knowledge, none of the Plaintiffs who have filed suit in this Court are residents of Illinois, and only one of the Plaintiffs who has filed a lawsuit related to the accident (Plaintiff Ronald Ledford) is a citizen of the United States.

6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 26, 2010 at RENTON, Washington.

Sworn to before me    Arlene Terry Addington
this 26th day of February, 2010

_Arlene Terry Addington_                    _Thomas K. Dodt_
Notary Public                                Thomas K. Dodt
My Commission Ends:  Dec. 4, 2010

7

# EXHIBIT 3



2007
ANNUAL REPORT
OF THE ILLINOIS COURTS

*Statistical Summary*

## CIVIL CASELOAD STATISTICS BY COUNTY
## CIRCUIT COURTS OF ILLINOIS
## CALENDAR YEAR 2007

| CIRCUIT/COUNTY | | ADDITION | ARBITRA-TION | CHANCERY | DISSOLU. OF MARR. | EMINENT DOMAIN | FAMILY | LAW > $50,000 JURY | LAW > $50,000 NON-JURY | LAW < $50,000 JURY | LAW < $50,000 NON-JURY | MUNICIP CORP. | MENTAL HEALTH | MISCELL REMEDY | ORDER OF PROTECT | PROBATE | SMALL CLAIMS | TAX | TOTAL CIVIL CASES | TOTAL ALL CASES * | CIVIL AS % ALL CASES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20th CIRCUIT TOTAL | New Filed | 192 | 0 | 1,870 | 1,584 | 17 | 1,439 | 341 | 390 | 10 | 2,847 | 5 | 312 | 496 | 995 | 1,104 | 9,817 | 173 | 23,292 | 141,300 | 16.5 |
| | Reinstated | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 246 | 0.0 |
| | Disposed Of | 155 | 0 | 1,779 | 1,454 | 17 | 1,584 | 542 | 282 | 28 | 2,811 | 5 | 299 | 552 | 952 | 931 | 9,051 | 131 | 22,154 | 116,986 | 18.9 |
| | End Pending | 163 | 0 | 1,500 | 989 | 55 | 2,076 | 1,301 | 547 | 50 | 648 | 1 | 20 | 1,125 | 249 | 3,286 | 4,437 | 756 | 17,949 | 105,293 | 17.0 |
| 21st IROQUOIS | New Filed | 19 | 0 | 125 | 106 | 0 | 39 | 8 | 15 | 0 | 127 | 0 | 0 | 43 | 142 | 110 | 562 | 29 | 1,325 | 9,543 | 13.9 |
| | Reinstated | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Disposed Of | 15 | 0 | 97 | 96 | 0 | 2 | 12 | 11 | 3 | 108 | 0 | 0 | 26 | 124 | 67 | 530 | 18 | 1,109 | 9,681 | 11.5 |
| | End Pending | 10 | 0 | 141 | 128 | 1 | 189 | 23 | 26 | 6 | 70 | 1 | 1 | 34 | 102 | 651 | 288 | 52 | 1,722 | 10,669 | 16.1 |
| 21st KANKAKEE | New Filed | 36 | 0 | 660 | 547 | 0 | 211 | 56 | 97 | 23 | 933 | 0 | 47 | 566 | 330 | 291 | 3,042 | 106 | 6,945 | 40,432 | 17.2 |
| | Reinstated | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Disposed Of | 38 | 0 | 665 | 561 | 0 | 154 | 83 | 70 | 27 | 877 | 0 | 47 | 463 | 317 | 176 | 2,892 | 34 | 6,406 | 38,540 | 16.6 |
| | End Pending | 50 | 0 | 957 | 823 | 2 | 1,161 | 159 | 191 | 25 | 851 | 3 | 0 | 1,742 | 255 | 5,855 | 2,068 | 656 | 14,798 | 40,107 | 36.9 |
| 21st CIRCUIT TOTAL | New Filed | 55 | 0 | 785 | 653 | 0 | 250 | 64 | 112 | 23 | 1,060 | 0 | 47 | 609 | 472 | 401 | 3,604 | 135 | 8,270 | 49,975 | 16.5 |
| | Reinstated | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Disposed Of | 53 | 0 | 762 | 657 | 0 | 156 | 95 | 81 | 30 | 985 | 0 | 47 | 489 | 441 | 243 | 3,422 | 52 | 7,515 | 48,221 | 15.6 |
| | End Pending | 60 | 0 | 1,098 | 951 | 3 | 1,350 | 182 | 217 | 31 | 921 | 3 | 1 | 1,776 | 357 | 6,506 | 2,356 | 708 | 16,520 | 50,776 | 32.5 |
| 22nd MCHENRY | New Filed | 39 | 786 | 1,683 | 1,180 | 6 | 334 | 107 | 368 | 3 | 999 | 4 | 9 | 371 | 547 | 409 | 4,914 | 1 | 11,760 | 105,492 | 11.1 |
| | Reinstated | 0 | 93 | 286 | 35 | 4 | 11 | 15 | 20 | 1 | 51 | 3 | 0 | 3 | 0 | 11 | 270 | 0 | 800 | 3,384 | 23.6 |
| | Disposed Of | 46 | 843 | 1,739 | 1,203 | 17 | 321 | 284 | 185 | 2 | 1,034 | 6 | 10 | 327 | 543 | 417 | 4,871 | 3 | 11,851 | 108,141 | 11.0 |
| | End Pending | 20 | 429 | 722 | 862 | 7 | 141 | 499 | 229 | 4 | 167 | 4 | 0 | 115 | 5 | 451 | 1,482 | 0 | 5,137 | 23,909 | 21.5 |
| 22nd CIRCUIT TOTAL | New Filed | 39 | 786 | 1,683 | 1,180 | 6 | 334 | 107 | 368 | 3 | 999 | 4 | 9 | 371 | 547 | 409 | 4,914 | 1 | 11,760 | 105,492 | 11.1 |
| | Reinstated | 0 | 93 | 286 | 35 | 4 | 11 | 15 | 20 | 1 | 51 | 3 | 0 | 3 | 0 | 11 | 270 | 0 | 800 | 3,384 | 23.6 |
| | Disposed Of | 46 | 843 | 1,739 | 1,203 | 17 | 321 | 284 | 185 | 2 | 1,034 | 6 | 10 | 327 | 543 | 417 | 4,871 | 3 | 11,851 | 108,141 | 11.0 |
| | End Pending | 20 | 429 | 722 | 862 | 7 | 141 | 499 | 229 | 4 | 167 | 4 | 0 | 115 | 5 | 451 | 1,482 | 0 | 5,137 | 23,909 | 21.5 |
| DOWNSTATE TOTAL | New Filed | 2,444 | 12,028 | 35,287 | 31,554 | 269 | 16,319 | 4,264 | 7,165 | 363 | 43,036 | 65 | 4,939 | 17,310 | 25,576 | 16,607 | 147,648 | 3,806 | 368,680 | 2,500,066 | 14.7 |
| | Reinstated | 10 | 707 | 705 | 677 | 9 | 437 | 219 | 159 | 18 | 331 | 0 | 55 | 29 | 29 | 216 | 1,887 | 18 | 5,480 | 62,470 | 8.8 |
| | Disposed Of | 2,289 | 12,172 | 31,524 | 31,640 | 311 | 14,576 | 6,160 | 5,400 | 490 | 43,532 | 60 | 4,798 | 16,194 | 24,776 | 16,673 | 143,407 | 3,260 | 357,262 | 2,514,055 | 14.2 |
| | End Pending | 2,285 | 5,826 | 28,569 | 25,067 | 736 | 28,382 | 16,037 | 10,143 | 1,687 | 26,472 | 230 | 1,345 | 18,722 | 7,478 | 76,560 | 75,844 | 6,891 | 332,274 | 1,227,758 | 27.1 |
| COOK COUNTY ** | New Filed | 2,016 | 11,754 | 38,814 | 27,143 | 172 | 8,941 | 10,176 | 10,721 | 11,742 | 220,829 | 6 | 3,815 | 1,040 | 23,533 | 9,000 | 15,851 | 8,971 | 404,524 | 1,955,480 | 20.7 |
| | Reinstated | 1 | 0 | 437 | 1,089 | 11 | 38 | 1,840 | 969 | 1,975 | 12,459 | 1 | 82 | 0 | 0 | 0 | 1,469 | 248 | 20,618 | 21,545 | 95.7 |
| | Disposed Of | 2,178 | 12,795 | 29,186 | 27,434 | 301 | 8,728 | 12,577 | 11,411 | 14,317 | 193,799 | 1 | 3,616 | 1,020 | 23,539 | 6,769 | 16,748 | 10,335 | 374,754 | 1,847,369 | 20.3 |
| | End Pending | 1,872 | 497 | 36,261 | 13,153 | 254 | 2,448 | 17,434 | 6,591 | 14,189 | 267,467 | 35 | 1,316 | 515 | 20 | 67,186 | 7,734 | 25,701 | 462,673 | 870,191 | 53.2 |
| STATE TOTAL | New Filed | 4,460 | 23,782 | 74,101 | 58,697 | 441 | 25,260 | 14,440 | 17,886 | 12,105 | 263,865 | 71 | 8,754 | 18,350 | 49,109 | 25,607 | 163,499 | 12,777 | 773,204 | 4,455,546 | 17.4 |
| | Reinstated | 11 | 707 | 1,142 | 1,766 | 20 | 475 | 2,059 | 1,128 | 1,993 | 12,790 | 1 | 137 | 29 | 29 | 216 | 3,356 | 266 | 26,098 | 84,015 | 31.1 |
| | Disposed Of | 4,467 | 24,967 | 60,710 | 59,074 | 612 | 23,304 | 18,737 | 16,811 | 14,807 | 237,331 | 61 | 8,414 | 17,214 | 48,315 | 23,442 | 160,155 | 13,595 | 732,016 | 4,361,424 | 16.8 |
| | End Pending | 4,157 | 6,323 | 64,830 | 38,220 | 990 | 30,830 | 33,471 | 16,734 | 15,876 | 293,939 | 265 | 2,661 | 19,237 | 7,498 | 143,746 | 83,578 | 32,592 | 794,947 | 2,097,949 | 37.9 |

* TOTAL OF ALL CASES IN ALL CATEGORIES: CIVIL, CRIMINAL, TRAFFIC, CONSERVATION, AND ORDINANCE, AND JUVENILE.
** IN COOK COUNTY, THE MONETARY DIVIDING POINT FOR LAW CASES IS $30,000 FOR MUNICIPAL DISTRICT ONE, AND $100,000 FOR MUNICIPAL DISTRICTS TWO THROUGH SIX.

## LAW CASE DISPOSITIONS BY COUNTY
## CIRCUIT COURTS OF ILLINOIS
### CALENDAR YEAR 2007

| | | TOTAL LAW CASES DISPOSED OF | | | LAW JURY CASES | | | | | |
| | | | | | NO. TERMINATED BY VERDICT | | | AVERAGE TIME IN MONTHS | | |
| CIRCUIT | COUNTY | LAW OVER $50,000 | LAW $50,000 OR LESS | TOTAL | LAW OVER $50,000 | LAW $50,000 OR LESS | TOTAL | LAW OVER $50,000 | LAW $50,000 OR LESS | ALL LAW JURY VERDICTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 12th.... | WILL | 1,003 | 3,770 | 4,773 | 38 | 5 | 43 | 46.1 | 22.7 | 43.4 |
| 12th.... | CIRCUIT TOTAL | 1,003 | 3,770 | 4,773 | 38 | 5 | 43 | 46.1 | 22.7 | 43.4 |
| 13th.... | BUREAU | 34 | 123 | 157 | 0 | 0 | 0 | 0.0 | 0.0 | 0.0 |
| | GRUNDY | 63 | 248 | 311 | 3 | 0 | 3 | 44.8 | 0.0 | 44.8 |
| | LASALLE | 240 | 764 | 1,004 | 13 | 0 | 13 | 47.1 | 0.0 | 47.1 |
| 13th.... | CIRCUIT TOTAL | 337 | 1,135 | 1,472 | 16 | 0 | 16 | 46.7 | 0.0 | 46.7 |
| 14th.... | HENRY | 44 | 155 | 199 | 1 | 0 | 1 | 31.0 | 0.0 | 31.0 |
| | MERCER | 4 | 15 | 19 | 0 | 0 | 0 | 0.0 | 0.0 | 0.0 |
| | ROCK ISLAND | 131 | 1,170 | 1,301 | 6 | 0 | 6 | 24.8 | 0.0 | 24.8 |
| | WHITESIDE | 76 | 195 | 271 | 1 | 0 | 1 | 71.6 | 0.0 | 71.6 |
| 14th.... | CIRCUIT TOTAL | 255 | 1,535 | 1,790 | 8 | 0 | 8 | 31.4 | 0.0 | 31.4 |
| 15th.... | CARROLL | 14 | 45 | 59 | 0 | 0 | 0 | 0.0 | 0.0 | 0.0 |
| | JO DAVIESS | 27 | 66 | 93 | 0 | 0 | 0 | 0.0 | 0.0 | 0.0 |
| | LEE | 42 | 157 | 199 | 0 | 0 | 0 | 0.0 | 0.0 | 0.0 |
| | OGLE | 42 | 250 | 292 | 3 | 1 | 4 | 6.1 | 19.8 | 9.6 |
| | STEPHENSON | 61 | 399 | 460 | 5 | 0 | 5 | 38.3 | 0.0 | 38.3 |
| 15th.... | CIRCUIT TOTAL | 186 | 917 | 1,103 | 8 | 1 | 9 | 26.3 | 19.8 | 25.5 |
| 16th.... | DEKALB | 114 | 548 | 662 | 4 | 2 | 6 | 39.1 | 23.1 | 33.8 |
| | KANE | 709 | 2,251 | 2,960 | 20 | 0 | 20 | 45.5 | 0.0 | 45.5 |
| | KENDALL | 78 | 645 | 723 | 3 | 0 | 3 | 28.3 | 0.0 | 28.3 |
| 16th.... | CIRCUIT TOTAL | 901 | 3,444 | 4,345 | 27 | 2 | 29 | 42.6 | 23.1 | 41.3 |
| 17th.... | BOONE | 44 | 92 | 136 | 1 | 0 | 1 | 13.0 | 0.0 | 13.0 |
| | WINNEBAGO | 406 | 2,435 | 2,841 | 13 | 0 | 13 | 60.8 | 0.0 | 60.8 |
| 17th.... | CIRCUIT TOTAL | 450 | 2,527 | 2,977 | 14 | 0 | 14 | 57.4 | 0.0 | 57.4 |
| 18th.... | DU PAGE | 1,422 | 4,753 | 6,175 | 29 | 3 | 32 | 38.4 | 2.5 | 35.0 |
| 18th.... | CIRCUIT TOTAL | 1,422 | 4,753 | 6,175 | 29 | 3 | 32 | 38.4 | 2.5 | 35.0 |
| 19th.... | LAKE | 1,117 | 3,004 | 4,121 | 22 | 0 | 22 | 23.5 | 0.0 | 23.5 |
| 19th.... | CIRCUIT TOTAL | 1,117 | 3,004 | 4,121 | 22 | 0 | 22 | 23.5 | 0.0 | 23.5 |
| 20th.... | MONROE | 43 | 99 | 142 | 1 | 0 | 1 | 35.3 | 0.0 | 35.3 |
| | PERRY | 31 | 98 | 129 | 2 | 0 | 2 | 35.3 | 0.0 | 35.3 |
| | RANDOLPH | 46 | 169 | 215 | 4 | 4 | 8 | 38.4 | 12.7 | 25.5 |
| | ST. CLAIR | 687 | 2,443 | 3,130 | 7 | 0 | 7 | 29.1 | 0.0 | 29.1 |
| | WASHINGTON | 17 | 30 | 47 | 0 | 0 | 0 | 0.0 | 0.0 | 0.0 |
| 20th.... | CIRCUIT TOTAL | 824 | 2,839 | 3,663 | 14 | 4 | 18 | 33.1 | 12.7 | 28.6 |
| 21st.... | IROQUOIS | 23 | 111 | 134 | 2 | 0 | 2 | 29.6 | 0.0 | 29.6 |
| | KANKAKEE | 153 | 904 | 1,057 | 2 | 0 | 2 | 41.4 | 0.0 | 41.4 |
| 21st.... | CIRCUIT TOTAL | 176 | 1,015 | 1,191 | 4 | 0 | 4 | 35.5 | 0.0 | 35.5 |
| 22nd... | MCHENRY | 469 | 1,036 | 1,505 | 9 | 0 | 9 | 46.8 | 0.0 | 46.8 |
| 22nd... | CIRCUIT TOTAL | 469 | 1,036 | 1,505 | 9 | 0 | 9 | 46.8 | 0.0 | 46.8 |
| | DOWNSTATE TOTAL | 11,560 | 44,022 | 55,582 | 416 | 53 | 469 | 36.4 | 23.3 | 34.9 |
| COOK | COOK COUNTY | 23,988 | 208,116 | 232,104 | 489 | 362 | 851 | 37.2 | 25.3 | 32.1 |
| | STATE TOTAL | 35,548 | 252,138 | 287,686 | 905 | 415 | 1,320 | 36.8 | 25.0 | 33.1 |

# EXHIBIT 4

King County Superior Court:  Civil Filings



**King County Superior Court:  Civil Filings**

Civil (no DVP,HAR,UND) ■ Civil - DVP,HAR,UND □ Total

|  | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil (no DVP,HAR,UND) | 13455 | 13398 | 13334 | 13132 | 13943 | 13914 | 14978 | 16853 | 16735 | 16596 | 14427 | 15617 | 17434 |
| Civil - DVP,HAR,UND | 9243 | 9387 | 8778 | 8815 | 9129 | 9462 | 9588 | 10451 | 10832 | 11319 | 11042 | 10403 | 10143 |
| Total | 22698 | 22785 | 22112 | 21947 | 23072 | 23376 | 24566 | 27304 | 27567 | 26915 | 25469 | 26020 | 27577 |

DVP (domestic violence petition), HAR (civil harassment) and UND (unlawful detainer) are grouped into a separate category for reporting.  Lower Court Appeals are excluded.

King County Superior Court: Civil Clearance Rate



Clearance rate is defined as the number of resolved (outgoing) cases as a percentage of the number of new filing (incoming) cases in the same year. A number over 100% indicates that the court disposes of more cases than it receives.

DVP (domestic violence petition), HAR (civil harassment) and UND (unlawful detainer) are grouped into a separate category for reporting. Lower Court Appeals are excluded.

King County Superior Court: Civil Cases – Time to Disposition



**King County Superior Court Civil Cases:
Percentage of Cases Disposed within 24 Months
(Excluding DVP, HAR and UND cases)**

| Year | Percentage |
|------|------------|
| 1996 | 97% |
| 1997 | 96% |
| 1998 | 97% |
| 1999 | 97% |
| 2000 | 97% |
| 2001 | 96% |
| 2002 | 96% |
| 2003 | 96% |
| 2004 | 96% |
| 2005 | 90% |
| 2006 | 96% |
| 2007 | 96% |
| 2008 | 96% |

Time to disposition shows the percentage of cases disposed or otherwise resolved within the established time frames.

The number represents the percentage of disposed cases that were resolved within the state time guideline – 100% within 24 months after filing. The goal is to achieve 100% within 24 months.

DVP (domestic violence petition), HAR (civil harassment) and UND (unlawful detainer) are grouped into a separate category and excluded in the age computation. Lower Court Appeals are excluded.

King County Superior Court: Civil Cases – Age of Active Pending Caseload



**King County Superior Court Civil Cases :**
**Percentage of Year-end Active Cases Remaining Unresolved beyond 24 Months**
**(Excluding DVP, HAR and UND cases)**

| Year | Value |
|------|-------|
| 1997 | 5% |
| 1998 | 4% |
| 1999 | 5% |
| 2000 | 6% |
| 2001 | 8% |
| 2002 | 9% |
| 2003 | 10% |
| 2004 | 12% |
| 2005 | 5% |
| 2006 | 8% |
| 2007 | 8% |
| 2008 | 5% |

This chart shows the age of the active cases pending before the court, measured as the percentage of pending cases that have exceeded the existing state guidelines for disposition – 100% within 24 months after filing.

The number represents the percentage of active pending cases that remain on unresolved beyond 24 months. Our goal is to reduce this percentage closer to zero percent (0%).

DVP (domestic violence petition), HAR (civil harassment) and UND (unlawful detainer) are grouped into a separate category and excluded in the age computation. Lower Court Appeals are excluded.